UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **JOHN BARNETT** | * | **CIVIL ACTION NO.: 1:20-CV-280** |
| | * | |
| | * | **JUDGE: MARCIA A. CRONE** |
| **VERSUS** | * | |
| | * | **MAG. JUDGE:** |
| | * | |
| **STAFFORD TRANSPORT OF** | * | |
| **LOUISIANA D/B/A CUSTOM ECOLOGY** | * | |
| **INC AND JENNIFER LYLES** | * | **JURY TRIAL** |

---

# MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM OF GROSS NEGLIGENCE

---

NOW INTO COURT, through undersigned counsel, come Defendants, Stafford Transport of Louisiana d/b/a Custom Ecology Inc. and Jennifer Lyles, who respectfully request that this Court grant their Motion for Partial Summary Judgment and dismiss Plaintiff's claim of gross negligence in its entirety. Plaintiff has failed to produce any evidence to support this claim. As it is his burden to prove this claim at trial, his failure to produce any evidence in support mandates a dismissal of this claim with prejudice.

Respectfully Submitted:
**TAYLOR, WELLONS, POLITZ & DUHE, APLC**

BY: */s/Jen A. O'Connell*
Jen A. O'Connell (Bar Roll No. 24117193)
Ryan Zumo (Texas Bar Roll No. 24117443)
TAYLOR, WELLONS, POLITZ & DUHE, APLC
4041 Essen Lane, Suite 500
Baton Rouge, Louisiana 70809
Telephone: (225) 387-9888
Facsimile: (225) 387-9886
joconnell@twpdlaw.com
***Counsel for Defendant***

## BRIEF IN SUPPORT OF SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Defendants, Stafford Transport of Louisiana d/b/a Custom Ecology Inc. ("CEI") and Jennifer Lyles ("Lyles") move for partial summary judgment on Plaintiff, John Barnett's claims of gross negligence. To support a claim of gross negligence, Texas requires a plaintiff prove the defendant operated with an "extreme degree of risk" such that there was a likelihood of serious injury; and, the defendant had subjective awareness of the risk but proceeded with consciousness indifference.

Here, Plaintiff admitted the subject accident was the result of an honest mistake by a CEI employee.[1] He further testified:

> Q: Do you believe that Jennifer Lyles could have anticipated what was going to happen to you? Like she knew ahead of time that that trailer door was going to hit you in the face?
>
> A: No. I don't think no one could.[2]

By Plaintiff's own testimony, no one could have anticipated what happened to him on April 10, 2020. This testimony alone is sufficient to dismiss any claims of gross negligence against Defendants with prejudice.

## I. <u>LIST OF UNCONTESTED MATERIAL FACTS</u>

- Lyles made an honest mistake by forgetting to unhook the passenger side chain of her dump gate.[3]
- Lyles attempted to tip her trailer twice, not realizing the passenger side chain remained

[1] While Defendants deny they were negligence in causing the accident, Plaintiff's allegations are accepted as true for purposes of this motion.
[2] See Plaintiff's deposition transcript as **Exhibit A**, P193, L9-13.
[3] See Lyles Deposition Transcript as **<u>Exhibit B,</u>** P255, L8; P256, L1-3; Ex-A, P193, L2-4.

attached. [4]

- A Waste Management employee observed her tipping and signaled to her the chain was stuck. [5]

- Lyles tried to fix her chain but was physically unable to do so. She thus asked a Waste Management employee to grab a grinder. [6]

- A Waste Management employee asked Plaintiff to bring bolt cutters to the tipper. [7] No one asked Plaintiff to cut the chain. [8] Plaintiff did so voluntarily. [9]

- Plaintiff chose the location and manner in which he wanted to cut the chain. [10]

- Plaintiff assumed the trailer had been tipped at least once and assumed trash was pressing against the trailer door. [11]

- Plaintiff knew the pressure against the trailer door[12] could cause it to come open once he cut the chain.[13]

- Plaintiff chose where to position himself, atop the tipper, despite knowing it could be dangerous.[14]

- Plaintiff climbed onto the top of the tipper, stood within striking distance of the dump gate and cut the chain. The dump gate swung open and struck Plaintiff in the face. [15]

- Lyles could not have anticipated anyone would climb atop the tipper to cut the chain.[16]

- Plaintiff does not believe Lyles intentionally failed to unhook the passenger side chain; he thought it was an honest mistake.[17]

- Plaintiff does not believe Lyles had an extreme disregard for the safety of people around

---

[4] Ex-B, P186, L15-23.
[5] Ex-B, P186, L24-25; P187, L1-2.
[6] Ex-B, P193, L8-13; P192, L2-3; P198, L17-19.
[7] Ex-A P126-140.
[8] Ex-A, P137, L2-4; P138, L5-13; Ex-B, P258, L3-20.
[9] Ex-A, P136, L16-22.
[10] Ex-A, P136, L13-15.
[11] Ex-A, P136, L1-15.
[12] Ex-A, P162, L22-25; P177, L5-9.
[13] Ex-A, P171, L3.
[14] Ex-A, P136, L8-15.
[15] Ex-A, P127, L3-4; P136, L11-12; P145, L22-25; P146, L1-12 (Charles' safety); P136, L13-15, 21-22 (instructing Charles); P127, L2-5; P148, L15-28 (climbing on tipper); P127, L8-9; P152, L17-22; P178, L14-16; P202, L11-12 (safe position); P203, L13-18; P269, L5-8 (gate would open).
[16] Ex-B, P206, L23-25; P261, L1-10; P265, L8-23; P272, L13-16.
[17] Ex-A, P188, L20-21; P189, L2-4.

her.[18]

- Plaintiff does not believe Lyles, or anyone else, could have anticipated the accident.[19]

## II. LIST OF EXHIBITS

A. Portions of John Barnett's Deposition Transcript

B. Portions of Jennifer Lyles's Deposition Transcript

C. Plaintiff's Petition

## III. FACTUAL BACKGROUND

Suit was originally filed in Newton County District Court in Texas. Defendants removed the matter to the United States District Court of the Eastern District of Texas on the grounds of federal diversity jurisdiction. Plaintiff's Petition alleges the following acts of negligence against Defendants:

- Failing to maintain its trailer in a reasonable working manner so it could be operated safely and without the need for cutting chains;
- Failing to properly train its drivers on proper tipping offloading procedures and the potential dangers associated with failed tipping attempts;
- Failing to provide its employees with proper equipment;
- Failing to remove both dump gate chains before attempting to tip the trailer;
- Failing to reasonably advise and warn Plaintiff about the prior two unsuccessful attempts to tip the trailer before asking him to cut the chain;
- Failing to properly supervise the cutting of the chain under the circumstances of two prior failed tipping attempts;
- Creating a dangerous situation and failing to take reasonable steps to avoid causing injury to Plaintiff.

Plaintiff's Petition also alleges gross negligence against Defendants related to the above actions and omissions.

### *A. Landfill Procedure and Process*

This case arises from an accident at a landfill on April 10, 2020 in Newton County Texas.

---

[18] Ex-A, P193, L5-8.
[19] Ex-A, P193, L9-13.

Plaintiff worked as a heavy equipment mechanic for Waste Management.[20] Jennifer Lyles was truck driver for CEI.[21] Lyles's job was to haul Waste Management's trash between a transfer station in Calcasieu Parish, Louisiana to Waste Management's landfill in Newton County, Texas. This task included permitted loads weighing up to 108,000 pounds.[22]




At the time of the subject accident, Lyles hauled large trailers filled with trash into the landfill and performed a number of tasks to prepare the trailer to be dumped. The trailers driven to the Waste Management landfill are equipped with a single rear door called a dump gate. Trash only exits the trailer through this back door which swings open from the bottom like a garage door.[23] The tipper at the landfill only accommodates dump gates that open in this manner.[24] The dump gate is held closed by large chains affixed to either side with a binder.[25] The binder acts as a ratchet to either tighten or loosen the chains. At the time of the accident, Lyles's typical protocol was to remove the passenger side chain and back the trailer onto a piece of machinery called a




---

[20] Ex-A, P75, 23-25, P76, L-10.
[21] Ex-B, P29, L306.
[22] Ex-B, P49,
[23] Ex-A, P263, L20-22; See Exhibit 11 authenticated and attached to Jennifer Lyles's deposition transcript **Exhibit B** to this motion. See Ex-B, P125, L1-7. See also Exhibit 25 to Exhibit B, authenticated P254, L1-9.
[24] Ex-A, P170, L16-23.
[25] See Exhibit 7-1 photograph authenticated and attached to Jennifer Lyles's deposition transcript **Exhibit B** to this motion. See Exhibit B, P81, L16-23.

tipper. Once on the tipper, the actual tractor is disconnected from the trailer and pulled away.[26] Then, the driver's side trailer chain is removed. Once the trailer is positioned on the tipper with chains removed, a hydraulic lift raises the front of the trailer into the air and gravity pulls the trash out into a trash pit. No part of the actual tipping process involves the operation of a commercial vehicle/tractor.[27]

### *B. Jennifer Lyles's Relevant Background Testimony*

Lyles received her commercial driver's license in 2013.[28] Since receiving her CDL, until leaving CEI, Lyles worked solely as a truck driver.[29] There is no evidence she was involved in any prior accidents nor any evidence her CDL license has ever been suspended or revoked.[30] Plaintiff was familiar with Lyles prior to the subject accident and described her as a safe driver.[31] In May of 2020, she resigned from CEI and accepted the position of head instructor at CDL Mentors Truck Driving School where she prepares students for the CDL test.[32] This school operates out of McNeese University.

At the time of the April 10, 2020 accident, Lyles was CEI's trainer: she trained other drivers regarding hauling waste between Louisiana and Texas and use of the tipper.[33] Prior to the subject accident, Lyles had a friendly relationship with the landfill workers.[34] She conversed regularly with Plaintiff and other Waste Management employees. Waste Management employees regularly assisted drivers at the landfill including Plaintiff and an employee named John Stanley. Lyles was

---

[26] Ex-B, P105, L21-25, P106.
[27] Ex-B, P29, L10-15; P130, L25; P131, L2-15.
[28] Ex-B, P17, L11-12.
[29] Ex-B, P17, L22-27.
[30] Ex-B, P17, L11-12; P18, L18-24.
[31] Ex-A, P189, L1-12.
[32] Ex-B, P19, L22-25; P20, L14-16; P21, L8-13.
[33] Ex- B, P30, L10-13.
[34] Ex-B, P167 (general description of Ms. Lyles' relationship with landfill employees); P171, L 9-11 (relationship with Barnett).

unaware of any rules or regulations prohibiting Waste Management employees from assisting drivers. To her knowledge, Waste Management employees assisted drivers with chains, the tipper and their trucks on a regular basis. Waste Management employees typically kept tools on site including bolt cutters and grinder that were regularly used to assist drivers.[35] When a driver had an issue on site, Waste Management "took care of it."[36]

Although Lyles was not specifically trained on how to relieve pressure on a door if chains become stuck, she was aware of methods for doing so.[37] Because Waste Management employees maintained the tools on site, Lyles did not believe having knowledge of using these tools was within the parameters of her employment with CEI.[38] Even alternative methods for relieving pressure on a chain, like using a dozer to press against the dump gate, was performed by a Waste Management employees. CEI drivers obviously could not carry large dozers in their trucks.[39]

### *C. Plaintiff's Relevant Background Testimony*

Plaintiff's position as heavy equipment operator required him to service equipment at the landfill. Plaintiff performed all required maintenance and agreed his job included "anything another Waste Management employee asks [him] to do, says they need assistance with."[40] While Plaintiff initially denied assisting drivers at the landfill was "part of his job description," he admitted he and other Waste Management employees routinely assisted drivers. Typically, another Waste Management employee would call him to come assist with various situations involving drivers.[41] In his words, he'd help the truck drivers "when they were in a bind. It's just the thing to

[35] Ex-B, P268, L24-25, P269, L1-11.
[36] Ex-B, P269, L8-11.
[37] Ex-B, P160-161,
[38] Ex-B, P269, L2-11.
[39] Ex-B, P269, L7-23.
[40] Ex-A, P113, L22-25.
[41] Ex-A, P113-114.

do."[42] Similar to Lyles's testimony, he was aware of another Waste Management employee cutting chains for a driver on prior occasions.[43] There were also instances when a backhoe was utilized to lift a door that had fallen off a trailer or assist a driver stuck on the roll-off.[44] He also "heard" of landfill employees using a dozer to relieve pressure from a stuck door. Drivers did not have this type of equipment on their trucks and would rely on a landfill employee in this process.[45] Plaintiff also assisted drivers on the tipper on two prior occasions including helping to jump an engine.[46]

Q. Typically. . .if the chain needed to be cut, that was something a Waste Management employee did?

A. Yes.

Q. Are you aware of any circumstances where a driver cut their own chain at the Waste Management landfill?

A. No, I'm not. I guess they could if they asked for the equipment to do it with.

Q. But under that circumstance, they'd be using the Waste Management equipment?

A. yes.[47]

Despite the allegations in his Petition, Plaintiff was unaware of any polices or procedures regarding interacting with drivers at the landfill.[48] Plaintiff was unaware of any Waste Management policy prohibiting employees from assisting drivers at the landfill. He was unaware of any instances of Waste Management prohibiting an employee from cutting chains for a driver.[49] He did not know if Waste Management had any specific policies regarding the tipper.[50] He was unaware of any rules or policies indicating drivers were supposed to supervise Waste Management

---

[42] Ex. A at Pg. 113, lines 19-21.
[43] Ex-A, P115, L3-9.
[44] Ex-A, P116-117.
[45] Ex-A, P117-118.
[46] Ex-A, P97.
[47] Ex-A, P137, L12-25.
[48] Ex-A, P111, P112.
[49] Ex-A, P115-116, P2-12.
[50] Ex-A, P96, L17-22.

employees.[51] And, he admitted he is responsible for his own safety at the landfill.[52]

Plaintiff believed the trailers weighed approximately 20 tons.[53] He was aware that when trailers enter the landfill, they are filled to the top with trash pushing against the back dump gate.[54] Plaintiff was aware that trash causes pressure on the back dump gate as the trailers arrive at the landfill.[55] He was aware dump gates could swing open due to the pressure of the trash.[56] Other than chains on the dump gates, Plaintiff was unaware of anything else keeping the trailer door closed.[57] Without the chains, Plaintiff fully expected the trailer door to open due to pressure from trash.[58]

### *D. Subject Accident*

On the day of the April 10, 2020 accident, Lyles believed she engaged in her normal routine before attempting to dump her trailer at the Waste Management landfill.[59] There is no evidence she was in a hurry, tired or otherwise distracted. She thought she removed her passenger side chain, backed the trailer onto the tipper, disengaged the tractor from the trailer and removed the driver's side chains. She then entered a small booth referred to as the "dog house" which contained a control board used to operate the tipper.[60] When she attempted to tip the trailer, no trash was coming out. As sometimes branches and large objects can get stuck in the trailer, she lowered the trailer and attempted to tip a second time.[61] During this second attempt, another Waste Management

---

[51] Ex-B, P105.
[52] Ex-A, P111, L3-10.
[53] Ex-A, P106, L5-11.
[54] Ex-A, P108.
[55] Ex-A, P108, L13-17.
[56] Ex-A, P108, L20-23.
[57] Ex-A, L13-15.
[58] Ex-A, P110-111.
[59] Ex-B, P186, L4-13.
[60] Ex-B, P186, L4-13.
[61] Ex-B, P186, L15-23.

employee signaled to her that one of the chains was stuck on the passenger side of the trailer door.[62] The chain was preventing the door from opening. Lyles thus lowered her trailer to the ground to remedy the situation. Lyles thought she had completely removed both chains before tipping and the only explanation for one chain remaining was "an honest mistake."[63] Lyles ran the situation "through her head" multiple times to figure out how this incident happened. She believes she may have loosened the passenger side chain but kept it hooked so it would not drag on the ground. Once she backed onto the tipper, she mistakenly forgot to completely unhook it.[64] Due to pressure from the trash bulging against the trailer door, Lyles was physically unable to remove the chain herself.[65]

The landfill commonly kept tools utilized by drivers including a grinder and bolt cutters. Lyles asked a Waste Management employee named Charles to grab a grinder so the chain could be cut. [66] Around this same time, one of Plaintiff's coworkers, named Brian, summoned him by radio to bring bolt cutters to the tipper.[67] Plaintiff could not recall if Brian explained the reason the bolt-cutters were necessary.[68] Heeding these instructions from Waste Management, Plaintiff grabbed his bolter cutters and drove his work truck to the tipper.

As Plaintiff was arriving with bolt-cutters, he saw Charles leaving to retrieve a grinder. Plaintiff handed Charles the bolt-cutters instead. Plaintiff could not recall whether any Waste Management employee advised him the trailer had been tipped twice. He readily admitted that, based on the situation, the trailer had been tipped at least once and there was pressure on the trailer door. He assumed this because the trash was causing pressure on the chain and the inability to

[62] Ex-B, P186, L24-25; P187, L1-2.
[63] Ex-B, P182, L6-13.
[64] Ex-B, P198.
[65] Ex-B, P159, L4-11.
[66] Ex-B, P193, L8-13; P192, L2-3.
[67] Ex-A P126-140.
[68] Ex-A, P131, L14-20.

remove it. [69]

Lyles believes removing chains with bolter cutters can be done safely with common sense.[70] She was not physically strong enough to cut the chain or remedy the situation herself.[71] Thus, Charles attempted to cut the chain from a ledge on the side of the trailer.[72] Plaintiff observed Charles having difficulty cutting the chain from this angle and thus volunteered to assist. Plaintiff took the bolt-cutters from Charles to identify a different position to cut the chain.[73]

Plaintiff denied Lyles or anyone else asked him to undertake this task: he decided to volunteer to cut the chain and chose the manner and position from which to do so.[74] Plaintiff then climbed onto the top of the tipper, stood within striking distance of the trailer door and cut the chain.[75]







---

[69] Ex-A, P132, L19-25, P135, P162, L17-25.
[70] Ex-B, P159, L22-25, P160, L1-6.
[71] Ex-B, P159, L1-9.
[72] Ex-A, P136, L8-18.
[73] Ex-A, P136, L13-15.
[74] Ex-A, P127, L1-13; P137, L2-4, P138, L5-13; P158, L3-20.
[75] Ex-A, P127, L3-4; P136, L11-12; P145, L22-25; P146, L1-12 (Charles' safety); P136, L13-15, 21-22 (instructing Charles); P127, L2-5; P148, L15-28 (climbing on tipper); P127, L8-9; P152, L17-22; P178, L14-16; P202, L11-12 (safe position); P203, L13-18; P269, L5-8 (gate would open).

The "X" marked on the photograph labeled Exhibit 1 is where Plaintiff indicated he was standing.[76] Lyles further clarified his location in the "X" marked on Exhibit 28 to her deposition.[77] Plaintiff denied observing anyone climb onto the tipper in this manner before and denied anyone at the scene suggested this was a good position.[78]

When Plaintiff cut the chain, the trash bulging against the trailer door caused it to swing open, striking him in the face. Plaintiff's actions of climbing atop the tipper occurred so quickly, neither Lyles nor anyone else realized he was going to cut the bolt from such a dangerous position.[79]

Plaintiff assumed the trailer had been tipped at least once and thus he was aware that thousands of pounds of trash were pressing against the trailer door.[80] Plaintiff however contends, that had he known the trailer was tipped twice, his actions would have somehow been different.[81] He contends tipping a trailer twice would have caused even more pressure than simply tipping once. Either way, he admitted he could not accurately evaluate the pressure on the door under either scenario.[82]

Despite his allegations of gross negligence, Plaintiff admitted Lyles's actions were likely the result of an honest mistake.[83] He does not believe she acted intentionally, he has no information or belief she was an unsafe driver, he has no belief she was in a hurry that day or operated in an unsafe manner, he has no belief she acted "intentionally and with extreme disregard for the safety of people around her."[84] He does not believe Lyles, or anyone else, could have anticipated the

---

[76] Ex-A, Exhibit 1 to the transcript. See also Ex-A, P138, L14-25, P139, L1-5.
[77] See Exhibit 28 to Lyles deposition transcript Exhibit B, P261, 264.
[78] Ex-A, P158, L1-25, P159, L1-9.
[79] Ex-B, P192, L1-10.
[80] Ex-A, P136, L1-15.
[81] Ex-A, P163.
[82] Ex-A, P163-164, P166, L6-16.
[83] Ex-A, P193, L2-4.
[84] Ex-A, P190-193.

accident.[85]

## IV. LAW AND ARGUMENT

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact in dispute. [86] Summary judgment is appropriate if the pleadings, depositions, discovery responses and affidavits show that there are no genuine issues of material fact and that the mover is entitled to summary judgment as a matter of law.[87] If movant (Defendants) will not bear the burden of proof at trial, (as Defendants will not), movants' burden on the motion does not require them to negate all essential elements of the adverse parties' claims, but rather to point out that there is an absence of factual support for one or more elements essential to the adverse parties' claims.[88]

Under Texas law, gross negligence must be proven by clear and convincing evidence.[89] Gross negligence consists of both objective and subjective elements.[90] Plaintiff must prove: 1) when viewed objectively from a defendant's standpoint at the time of the event, the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and, 2) the defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.[91]

Under the objective component, "extreme risk" is not a remote possibility or even a high probability of minor harm, but rather the likelihood of the plaintiff's serious injury.[92] For example, the court in *Greenwood Motor Line, Inc. v. Bush*, found such likelihood of injury when the defendant driver, who had exceeded 73 miles per hour sixty-three times previously, was speeding

---

[85] Ex-A, P193, L9-13.
[86] See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[87] See Fed. R. Civ. P. 56; *see also Celotex*, 477 U.S. at 323-24.
[88] *Id.,* see also *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1195 (5th Cir. 1986).
[89] *Diamond Shamrock Ref. Co., L.P. v. Hall*, 168 S.W.3d 164, 166 (Tex. 2005).
[90] See Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 785 (Tex.2001).
[91] See id.; TEX. CIV. PRAC. & REM.CODE § 41.001(11); State v. Shumake, 199 S.W.3d 279, 287 (Tex.2006).
[92] Mobil Oil Corp. v. Ellender, 968 S.W.2d 917, 921 (Tex.1998); Harrison, 70 S.W.3d at 785.

in a construction zone on a rainy night, had been involved in two prior preventable rear-end accidents, and was not qualified to operate the two twenty eight foot long trailers attached to his truck, struck the plaintiff from behind.[93]

The subjective prong, in turn, requires that the defendant knew about the risk, but that the defendant's acts or omissions demonstrated indifference to the consequences of its acts.[94] Such indifference to any consequence was evident in *USA Truck, Inc. v. West*, in which a driver decided to back a 75 foot long tractor trailer across two lanes of traffic on a four-lane urban highway on a dark and moonless night after driving 14 hours without a break, in violation of federal regulations, and in a manner an expert testified the driver "had no business doing" which caused a fatal collision.[95]

### *A. There is No Evidence of Gross Negligence against Jennifer Lyles*

Accepting Plaintiff's allegations of the accident as true (only for purposes of this motion) there is no evidence Lyles acted with gross negligence. Despite the allegations in his Petition, Plaintiff does not believe Lyles was grossly negligent. He testified:

> Q: Do you know why she didn't unhook the passenger-side chain?
> A: No, I don't know.[96]
>
> Q: Do you believe that she did it intentionally?
> A: No, I don't think it was intentional.[97]
>
> Q: Do you believe it was more likely a mistake?
> A: Yes.[98]
>
> Q: Do you believe that Jennifer Lyles intentionally had an extreme disregard for the safety of people around her?

---

[93] No. 05-14-01148-CV, 2017 WL 1550035, at *11 (Tex. App. Apr. 28, 2017).
[94] *La.-Pac. Corp. v. Andrade*, 19 S.W.3d 245, 246–47 (Tex.1999); *Wal–Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 326 (Tex.1993).
[95] See 189 S.W.3d 904 (Tex.App.—Texarkana 2006, pet. denied).
[96] Ex-A, P188, L14-16.
[97] Ex-A, P188, L20-21.
[98] Ex-A, P189, L2-4.

A: No, I don't.[99]

Q: Do you believe that Jennifer Lyles could have anticipated what was going to happen to you? Like she knew ahead of time that that trailer door was going to hit you in the face?
A: No. I don't think no one could.[100]

Q: You don't have any information to indicate that she wanted you to get hurt?
A: Well, no, ma'am.[101]

From either subjective or objective viewpoints, forgetting to unhook the chain was not, in and of itself, dangerous and did not involve an extreme degree of risk. The only dangerous element of the case was Plaintiff's own actions of climbing on top of the tipper, standing within the range of motion of the door and cutting the chain. Plaintiff volunteered to undertake these actions with full awareness that trash is always pressing on trailer doors, that doors can open at any time once unchained and under the assumption the trailer had been tipped at least once. Even accepting Plaintiff's allegation as true, that no one told him the trailer had been tipped twice, he assumed it had been tipped once. Subjectively speaking, even Plaintiff did not anticipate the danger of his actions when he climbed onto the tipper and stood in front of the door. It was Plaintiff's mistake that caused his injuries. If Plaintiff did not anticipate the danger of his own actions, it is impossible for Lyles to have done so.

Further, Lyles could not show conscious indifference to a danger she did not anticipate. Even if she had anticipated the danger, there is no evidence that she showed any conscious indifference to it. Rather, by Plaintiff's own admission, Lyles did not act intentionally, but merely made a mistake and did not have extreme disregard for the safety of others around her.

In *Petri v. Oil and Gas Properties, L.P.*, the Court granted summary judgment dismissing

---

[99] Ex-A, P193, L5-8.
[100] Ex-A, P193, L9-13.
[101] Ex-A, L 194, L5-7.

the claims of gross negligence under similar facts.[102] There, the decedent, while working on an oil rig, was swept away by heavy seas and killed.[103] The Court held the claims of gross negligence failed as a matter of law because the decedent "himself, decided to do the work, chose where to do it … despite the actual … conditions … at that time … in violation of common sense and … safety policies."[104] Like the decedent in *Petri*, Barnett volunteered to cut the chain,[105] chose where to do it despite knowing it could be dangerous;[106] cut the chain knowing there was pressure on the dump gate,[107] knew the dump gate would swing up;[108] did not fully assess the situation himself and assumed that chains needed to be cut.[109] As in *Petri*, Defendants are entitled to judgment as a matter of law that Jennifer Lyles's actions were free of gross negligence.

Importantly, a defendant cannot be liable for gross negligence when they actually and subjectively believed that the circumstances posed no risk to the injured party, even if they are wrong.[110]

### ***B. There is No Evidence of Gross Negligence against CEI***

The Petition alleges that all ordinary negligence allegations against CEI also amount to gross negligence for: 1) failing to maintain its trailer so it could be operated safely without cutting chains; 2) failing to properly train and supervise employees regarding the tipper; 3) failing to provide employees with proper equipment. The purpose of asserting these allegations is clear: confuse the jury with irrelevant allegations to distract them from the simple contributory negligence issues in the case. These allegations of gross negligence fail as a matter of law.

---

[102] 878 F.Supp.2d 744, 761 (S.D. Tex. 2012).
[103] *Id.* at 744.
[104] *Id.* at 761.
[105] Ex-A, P136, L16-22.
[106] Ex-A, P136, L8-15; P148, L22-25; P149, L6-10; P152, L8-22.
[107] Ex-A, P162, L22-25; P177, L5-9.
[108] Ex-A, P171, L3.
[109] Ex-A, P177, L18-25; P178, L1-13.
[110] *U-Haul Int'l*, 380 S.W.2d at 141 (citation omitted).

There is no evidence of prior accidents with the tipper or the driver involved in the subject accident. CEI did not ask Plaintiff to cut the chains on its trailer and had no way to anticipate that Plaintiff would put his head in the way of the door while he was cutting the chains. Thus, Plaintiff cannot prove the objective and subjective prongs of the gross negligence claims asserted directly against CEI: i.e. he cannot prove CEI could have anticipated the likelihood of this accident or that CEI consciously disregarded any danger.

1. *Trailer Maintenance is Irrelevant to the Disputed Issues*

First, trailer maintenance is irrelevant to the subject accident. There is no evidence any improper maintenance of the trailer caused the subject accident. Instead, Lyles honestly admitted she must have forgotten to completely unhook the chain on April 10, 2020. Plaintiff admitted he believes this resulted from an honest mistake on the part of Lyles. No further discovery on this issue will change this fact. Defendants are entitled to judgment as a matter of law dismissing this claim of gross negligence.

2. *There is No Evidence of Grossly Negligent Training and Supervision*

To establish a claim for negligent training, a plaintiff must prove that a reasonably prudent employer would have provided training beyond that which was given and that failure to do so caused his injuries.[111] To establish a claim for negligent supervision, a plaintiff must show that an employer's failure to supervise its employees caused his injuries.[112] To prove these acts or omissions were also grossly negligent, Plaintiff must also establish CEI's training and supervision of Jennifer Lyles was done with an extreme degree of risk, CEI had subjective awareness of this risk but continued its policies with consciousness indifference to the rights, safety and welfare of others. But, Plaintiff's own testimony defeats these allegations.

Lyles knew the proper procedures for tipping her load: no amount of training or supervisor

---

[111] *Allsup's Convenience Stores, Inc. v. Warren,* 934 S.W.2d 433, 437 (Tex.App.-Amarillo 1996, writ denied).
[112] *See Knight v. City Streets, L.L.C.,* 167 S.W.3d 580, 584 (Tex.App.-Houston [14th Dist.] 2005, no pet.); Morris, 78 S.W.3d at 49.

could have bypassed a chance mistake. There is no dispute both Plaintiff and Lyles were aware chains should be cut or removed with a grinder when a situation arises. Both testified when drivers had issues at the landfill, Waste Management employees and equipment were typically utilized to remedy the problem. Yet, Plaintiff himself had no training regarding the tipper nor was he aware of any Waste Management policies or procedures regarding the use of the tipper. [113] Despite this lack of training or policies, he routinely assisted drivers at the landfill.[114] Plaintiff admitted he voluntarily proceeded to cut the chain, chose the manner and method in which to do so and was fully aware of the danger of pressure against the dump gate. [115] He had no belief CEI employees are required to supervise him. [116] He assumed the trailer had been tipped at least once. Based on these facts, CEI's training/supervision of its own employees is not only irrelevant, but is also not the cause of the subject accident.

When Plaintiff's own employer provided no specific policies and procedures for removing chains or in operation of the tipper, any claims CEI somehow acted with extreme risk and consciousness indifference fail.

3. *<u>There is No Evidence CEI was Grossly Negligent in the Failure to Provide Proper Equipment</u>*

Defendant identified no similar cases on the issue. However, failure to provide proper equipment should follow the same reasoning of claims with negligence training/supervision: that is, whether CEI had a duty to provide grinders or bolt cutters to Lyles and the failure to do so caused Plaintiff's injuries. And, Plaintiff must further prove the failure to provide the grinders and bolter cutters was done despite knowledge of the extreme risk and consciousness indifference to the safety of others.

---

[113] Ex-A, P96, L17-22.
[114] Ex. A at Pg. 113, lines 19-21.
[115] Ex-A, P136, L1-15.
[116] Ex-B, P105.

Plaintiff's own testimony again negates these allegations of gross negligence. Plaintiff testified:

> Q. Typically. . .if the chain needed to be cut, that was something a Waste Management employee did?
>
> A. Yes.
>
> Q. Are you aware of any circumstances where a driver cut their own chain at the Waste Management landfill?
>
> A. No, I'm not. I guess they could if they asked for the equipment to do it with.
>
> Q. But under that circumstance, they'd be using the Waste Management equipment?
>
> A. yes.[117]

Even if Lyles had a grinder or bolt cutters, she was physically unable to remedy the situation herself. [118] Even if an alternative method of using a dozer to remove pressure from the door was utilized, the dozer would have been owned and operated by landfill employees.[119] There is no rational argument that CEI could be grossly negligent in failing to provide its drivers with equipment routinely maintained by the landfill. Accordingly, any allegations of gross negligence regarding the failure to provide drivers with the proper equipment must be dismissed.

## V. <u>CONCLUSION</u>

Plaintiff's only purpose for alleging gross negligence against Defendants is to muddy the issues at trial. The strategy aims to shift the focus of the trier of fact from a plaintiff's own negligence to a company with "bad policies" or "deficient training" even when such allegations are irrelevant. This strategy must be rejected and the claims of gross negligence dismissed. Texas law provides that claims of direct negligence against a defendant/employer are irrelevant once vicarious liability is admitted.[120] This legal conclusion renders corporate depositions and discovery

---

[117] Ex-A, P137, L12-25.
[118] Ex-B, P159, L4-11.
[119] Ex-A, P117, L9-25, P118, L1-9.
[120] See *Williams v. McCollister,* 671 F. Supp.2d 884 (S.D. Texas 9/22/09).

into training policies and procedures irrelevant. In order to continue discovery into these irrelevant issues, plaintiffs allege gross negligence in their Petitions despite having no factual basis to do so.[121]

Plaintiff's own deposition testimony supports summary judgment: he admittedly created a danger than no one could anticipate. There is no evidence either Jennifer Lyles or CEI acted with consciousness indifference to those around them. Any claims regarding maintenance of the trailer, training, supervision or CEI equipment are legally irrelevant.

Respectfully submitted:

**TAYLOR, WELLONS, POLITZ & DUHE, APLC**

BY: */s/ Jen A. O'Connell*
Jen A. O'Connell (Bar Roll No. 24117193)
Ryan Zumo (Texas Bar Roll No. 24117443)
TAYLOR, WELLONS, POLITZ & DUHE, APLC
4041 Essen Lane, Suite 500
Baton Rouge, Louisiana 70809
Telephone: (225) 387-9888
Facsimile: (225) 387-9886
joconnell@twpdlaw.com
***Counsel for Defendant***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Texas by using the CM/ECF System, which will send a notice of electronic filing to all counsel of record in this matter via the electronic filing system. I further certify that I mailed the forgoing document and notice of electronic filing by first-class mail to all counsel of record who are not participants in the CM/ECF system on this 19th day of February, 2021.

*/s/ Jen A. O'Connell*

[121] *Id.* at 889 discussing that alleging gross negligence will maintain the independent claims of negligence.