**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| **John Barnett** | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 1:20-cv-00280** |
| | § | |
| **Stafford Transport of Louisiana d/b/a** | § | |
| **Custom Ecology Inc** | § | |
| **Defendant.** | § | |

**PLAINTIFF'S MOTION TO COMPEL CEI**

NOW INTO COURT, through undersigned counsel, comes John Barnett, Plaintiff and files this Motion to Compel Defendant CEI and would show unto the Court the following:

## I. Factual Background.

1. On April 10, 2020, Plaintiff was working in the course and scope of his employment for Waste Management. (Waste Management is a subscriber to the Worker's Compensation program). Waste Management operates a landfill in Newton County, Texas. CEI regularly hauls trash / debris in 18-wheeler dump trailers from Louisiana to the Newton County Waste Management Facility. One of CEI's drivers is Jennifer Lyles. Defendant Lyles was working in the course and scope of her employment for CEI when this incident occurred.

2. On the day of the incident, Ms. Lyles attempted to dump a load of trash / debris at the Newton County Waste Management landfill. Before attempting to dump the load of trash / debris, CEI drivers must unhook two chains that hold the back-dump gate of the trailer closed. Defendant Lyles forgot to unhook one of the two chains and "tipped" her trailer two times trying to unload the trash / debris. The still-connected chain held the back-dump gate closed, and the weight of the trash / debris was pushed up against the back-dump gate, creating immense pressure on the gate.

3. After realizing that one of the two chains was not unhooked, Defendant Lyles requested the assistance of Waste Management employees, namely Plaintiff, to assist her in removing the remaining chain so she could dump her trailer. Defendant Lyles never informed Plaintiff that she tipped the trailer twice with the chain still hooked, and she never informed him that the entire weight of the trash / debris was creating pressure against the back-dump gate of the trailer.

4. Plaintiff cut the chain with a pair of bolt cutters. When the chain was cut, the pressure on the gate from the trash / debris caused the gate to spring open and hit Plaintiff in the face. The force of the blow caused Plaintiff's body to be lifted in the air and fall into an approximately (10) ten feet deep hole where his body landed on an air conditioning unit.

5. The blow to the face caused severe injuries including widespread facial fractures, traumatic injuries to his brain, and injuries to his spine and extremities. Mr. Barnett is still receiving treatment for these injuries, and he has been unable to return to work.

## II. Requests for Production at Issue in this Motion

6. Plaintiff sent CEI his Second Set of Requests for Production on March 17, 2021.[1] CEI's responses were due on April 16, 2021. CEI sent untimely responses on May 21, 2021.[2] In its response, CEI lodged (6) six general objections to every Request for Production and more specific objections to some Requests for Production.

7. Plaintiff sent a letter to CEI on May 21, 2021 requesting supplementation of CEI's responses.[3] CEI sent a response letter on May 28, 2021.[4] A conversation regarding the disputed

[1] Exhibit A: Plaintiff's Second Set of Requests for Production.

[2] Exhibit B: CEI's Responses to Plaintiff's Second Set of Requests for Production.

[3] Exhibit C: May 21, 2021 supplementation letter.

[4] Exhibit D: CEI's May 28, 2021 letter responding to supplementation request.

discovery was held between counsel for both parties via Zoom on June 2, 2021. No agreement could be reached regarding the following Requests for Production:

- RFP 38. All Qualcomm safety messages from April 1, 2019 to January 1, 2021 sent by Thomas Wallace to CEI drivers.
- RFP 40. The email Joe LaRocca sent to Thomas Wallace on May 13, 2020 and any responsive or reply emails made to it.
- RFP 41. All emails or other written correspondence sent to or received by all CEI employees regarding the incident that forms the basis of this suit. This request does not include privileged communications between CEI and its attorney.
- RFP 42. Regarding the trailer at issue in this case, all documents related to trailer maintenance regarding the door and latching system from the date the trailer was purchased until the date of the incident.
- RFP 43. Regarding the trailer at issue in this case, all documents regarding damage to the door and latching system of the trailer from the date the trailer was purchased until the date of the incident.

## III. Authority and Argument.

8. Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.[5] Once a party moves for a motion to compel discovery under Rule 37(a)(3)(B), the party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable.[6]

### *A. RFP 38*

9. This request specifically relates to "Qualcomm[7]" messages sent by Thomas Wallace to CEI drivers. Mr. Wallace is CEI's regional safety director. During his deposition, he testified that he

---

[5] Fed. R. Civ. Proc. 26(b)(1).

[6] *Gondola v. USMD PPM, LLC*, 2016 WL 3031852, at *2 (N.D. Tex. May 27, 2016).

[7] Qualcomm is a satellite-based message system that is commonly used to send messages from an employer to its commercial truck driver.

sent daily or weekly messages to CEI drivers via Qualcomm.[8] Plaintiff agreed to limit this request to only Qualcomm messages pertaining to (1) landfill safety, (2) the tipper, (3) "dog latches / claw hooks", (4) trailers, and (5) depressurizing trailer gates.[9]

10. CEI lodged a relevance objection. However, Plaintiff appropriately limited the subject matter of his request to (5) five categories of messages that go to the core issues in this case. Plaintiff fails to see how the requested messages are not relevant.

11. CEI also takes the position that "no testimony has established that any such messages regarding the tipper or this accident were transmitted through Qualcomm." We know that Wallace sends mass messages to CEI drivers via Qualcomm.[10] It is not beyond the realm of reasonable possibility that some of these messages dealt with (1) landfill safety, (2) the tipper, (3) "dog latches / claw hooks", (4) trailers, and (5) depressurizing trailer gates. The only sure way for Plaintiff to know whether responsive messages exist is to ask for them, which is why Plaintiff sent this request. If no such messages exist, then CEI need only drop its objections and respond accordingly. Otherwise, Plaintiff is left wondering whether responsive messages do exist.

***B. RFP 40***

12. This request specifically relates to a May 13, 2020 e-mail between Joe LaRocca (CEI Division Manager) and Thomas Wallace (CEI Safety Manager) regarding the incident made the basis of this suit and a statement made by Defendant Lyles.[11] After receiving the e-mail, Mr. Wallace forwarded it to two places: (1) CEI's corporate office and (2) Waste Management.[12]

[8] Exhibit E: Wallace Deposition, page 37.

[9] Exhibit C: May 21, 2021 supplementation letter.

[10] Exhibit E: Wallace Deposition, page 37.

[11] Exhibit E: Wallace Deposition, page 125, 126.

[12] Exhibit E: Wallace Deposition, page 126.

Finally, Mr. Wallace testified that e-mails such as the May 13 e-mail were routinely prepared by CEI employees.[13]

13. CEI objected to this request arguing that the May 13 e-mail was prepared in anticipation of litigation and is privileged. Plaintiff disagrees with the privilege assertion because (1) the e-mail was prepared in the normal course of business and (2) CEI waived the privilege by voluntarily sending the May 13 e-mail to Waste Management, a third party.

14. A document cannot be prepared in anticipation of litigation if it is prepared in the normal course of business.[14] Mr. Wallace's testimony that emails such as the May 13 email are routinely sent to him by virtue of his position as the regional safety manager show that the May 13 e-mail was prepared in the normal course of CEI's business.[15]

15. Additionally, blanket assertions of privilege are unacceptable as the Court and other parties must be able to test the merits of a privilege claim.[16] The Federal Rules dictate that when a party claims a privilege, it must provide a log that provides facts that would suffice to establish each element of the privilege or immunity that is claimed.[17] No such showing has been made regarding the May 13 e-mail.

16. Finally, assuming the May 13 e-mail is privileged, CEI has waived that privilege. When the holder of a privilege voluntarily releases information to a third party, the holder of the privilege

---

[13] Exhibit E: Wallace Deposition, page 126.

[14] *United States v. Homeward Residential, Inc*., 4:12-cv-461, 2016 WL 1031154 at *3 (E.D. Tex. Mar. 15, 2016).

[15] Exhibit E: Wallace Deposition, page 126.

[16] *United States v. Homeward Residential, Inc*., 4:12-cv-461, 2016 WL 1031154 at *3 (E.D. Tex. Mar. 15, 2016).

[17] *Id*.

waives its privilege.[18] Here, the record clearly establishes that CEI forwarded the May 13 e-mail to Waste Management, a third party, thereby waiving its right to claim a privilege.

***C. RFP 41***

17. This request concerns all written correspondence sent to or received by CEI employees regarding the incident that forms the basis of this suit. The request specifically indicates that it does not seek privileged communications between CEI and its attorney. CEI objected arguing that any communication sent between CEI employees after suit was filed was prepared in anticipation of litigation and is thus protected. CEI also indicates in its response that any emails sent prior to the date suit was filed have been requested and will be produced.

18. Regarding the claimed privilege, Plaintiff relies on paragraph 13 above. Because CEI is asserting a "blanket privilege" and has not provided a privilege log, its objection should be overruled and CEI should be required to produce responsive communications sent or received by CEI employees, excluding privileged communications with its attorney.

***D. RFP 42 and 43***

19. Requests for Production 42 and 43 are similar and CEI's lodged objections for both are identical. Therefore, both of these requests will be addressed together. RFP 42 and 43 request documents related to trailer maintenance and the latching system for the trailer. CEI objects arguing that discovery related to trailer maintenance and the latching system is not relevant.

20. For further context, Plaintiff requested documents related to trailer maintenance in his initial requests for production (see RFP 16).[19] CEI objected on the basis of relevance and resisted

---

[18] *City of Va. Beach v. U.S. Dept. of Commerce*, 995 F.2d 1247, 1253 (4th Cir.1993).

[19] Exhibit F: Plaintiff's First Set of RFP.

producing any information regarding trailer maintenance.[20] Plaintiff and CEI spoke specifically about RFP 16 and CEI's objection via written correspondence and telephone conversation. Plaintiff ultimately agreed to not seek trailer maintenance records because at the time these conversations were taking place (late 2020 / early 2021) no evidence had been developed showing that trailer defects or maintenance played a role in the case. However, since that time, additional facts have been developed indicating that trailer maintenance is in fact at issue.

21. Specifically, the trailer at issue was manufactured with "dog hooks" (also referred to as "claw latches").[21] Mr. Wallace testified that the very purpose of the dog hooks is to secure the back dump gate until it is time to be opened.[22] Coincidentally, the dog hooks on the trailer at issue in this case were broken at the time of the incident.[23]

22. Every witness present on the day of the incident has testified that the back dump gate of CEI's trailer sprung open and hit Mr. Barnett in the face when the chain was cut. A logical and reasonable vein of discovery would be to investigate the broken dump gate securement system on the trailer at issue in the case. Despite the newly developed evidence regarding the broken back dump gate securement system, CEI chooses to stand on its relevancy objection.

## IV. Plaintiff's FRCP 34 Request for Inspection

23. It is undisputed that pressure on the back dump gate of the trailer caused it to spring open. CEI admits that one way to depressurize a pressurized gate is to use a piece of heavy equipment to push on the gate and decompress the pressure.[24] Brian Singletary, a Waste Management heavy

---

[20] Exhibit G: CEI's Responses to Plaintiff's First Set of RFP.

[21] Exhibit E: Wallace Deposition, page 182.

[22] Exhibit E: Wallace Deposition, page 187 and 188.

[23] Exhibit H: Lockhart Deposition, page 71 and 72.

[24] Exhibit H: Lockhart Deposition, page 64.

equipment operator testified that he has witnessed CEI on numerous occasions bring its own equipment to the landfill to depressurize trailer gates.[25] Mr. Singletary testified that he would see CEI bring a "track hoe" out at least once a year to depressurize trailer gates.[26]

24. On May 4, 2021, Plaintiff sent a letter requesting inspection of a CEI "mini-excavator" pursuant to FRCP 34 that Plaintiff believed CEI used in the past to decompress pressurized trailer gates at the Newton County landfill.[27] CEI responded to this request on May 21, 2021 taking the position that CEI was not agreeable to the inspection request because CEI has never used a "mini-excavator" to decompress pressurized gates at the Newton County landfill.[28]

25. Plaintiff sent an amended FRCP 34 request on May 28, 2021.[29] In the amended request, Plaintiff requested to inspect "any equipment owned by CEI that has been used to depressurize gates on trailers at the Newton County landfill." Despite multiple witnesses testifying that CEI used equipment (both owned by CEI and rented by CEI) to decompress trailer gates at the Newton County landfill, CEI still opposes the inspection request.

## V. Prayer.

26. Plaintiff respectfully requests that the Court Overrule CEI's Objections and Order CEI to fully respond to the Discovery the subject of this Motion.

---

[25] Exhibit I: Singletary Deposition, page 79 and 86.

[26] Exhibit I: Singletary Deposition, page 66.

[27] Exhibit J: Plaintiff's May 4, 2021 Inspection Request.

[28] Exhibit K: CEI's May 17 FRCP 34 Inspection Request Response.

[29] Exhibit L: May 28, 2021 Amended Inspection Request.

Respectfully submitted,

**THE DAWS LAW FIRM**

/s/ *Malachi Daws*
**MALACHI DAWS**
State Bar No. 24082904
**JUDSON DAWS**
State Bar No.: 24101682
4055 Dowlen Road
Beaumont, TX 77706
P: (409) 838-6000
F: (409) 838-6003
E: mdaws@dawslawfirm.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Discovery has been forwarded to the following counsel of record on this 7th day of June 2021, pursuant to the FEDERAL RULES OF CIVIL PROCEDURE:

/s/ *Malachi Daws*
**MALACHI DAWS**

**JEN A. O'CONNELL**
4041 Essen Lane, Suite 500
Baton Rouge, Louisiana
70809 Ph.: 225-387-9888
Fax: 225-387-9886
E-Mail: joconnell@twpdlaw.com
**ATTORNEYS FOR STAFFORD TRANSPORT**
**OF LOUISIANA D/B/A CUSTOM ECOLOGY INC.**

*Via Email: joconnell@twpdlaw.com*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that on June 2, 2021 the parties complied with the "Meet and Confer" requirement found in Local Rule CV-7(h). Specifically, Malachi Daws conferred with Jen O'Connell via Zoom call regarding this Motion as required by the Local Rules. Opposing counsel is **OPPOSED** to this Motion.

*/s/ Malachi Daws*
**Malachi Daws**