**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **John Barnett** | **§** | |
| **Plaintiff,** | **§** | |
| | **§** | |
| **vs.** | **§** | **Civil Action No. 1:20-cv-00280** |
| | **§** | |
| **Stafford Transport of Louisiana d/b/a** | **§** | |
| **Custom Ecology, Inc. and** | **§** | |
| **Jennifer Lyles** | **§** | |
| **Defendants.** | **§** | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO QUASH AND, ALTERNATIVELY, MOTION TO MODIFY THE COURT'S SCHEDULING**

NOW INTO COURT COMES Plaintiff, John Barnett, and files this Response to Defendants' Motion to Quash and, alternatively, a Motion to Modify the Court's Scheduling Order, and would show unto the Court as follows:

## I. Factual Background

1. The subject incident occurred on April 10, 2020 when a refuse trailer (i.e., an 18-wheeler trailer used to haul trash) owned and operated by Defendants caused severe injury to Plaintiff. The rear trailer gate became stuck when Defendant Lyles failed to remove a chain before attempting to empty the trailer using a machine called a "Tipper". When Lyles attempted to tip the trailer (i.e., lifting it vertically so the trash would come out the back gate), the gate chain was still attached preventing the gate from opening and releasing the debris. When this happened, all of the debris (appx. 20 tons) pressed against the gate with nowhere to go. This caused immense pressure against the gate chain holding it closed. After Lyles lowered the trailer, there was so much pressure on the chain that she could not unhook it. Lyles then asked Plaintiff (an employee of the landfill) to cut the chain. As the chain was cut, the gate swung open violently, hitting Plaintiff in the head and sending him flying through the air into a trash pit some 12-15' below. The force of the impact

caused multiple facial fractures, irreversible sinus collapse, permanent loss of smell and taste, a moderate/severe traumatic brain injury, and the complete loss of employability.

## II. Summary of Issue

2. Plaintiff has timely requested to conduct the following discovery that Defendant is obstructing:

a. Deposition of **John Zambo** (East trailer manufacturer's safety engineer).
b. Deposition of **Clarence** "**Buck" Sheffield** (CEI Regional Maintenance Manager).[1]
c. Deposition of CEI **Corporate Representative over the Trailer Manual**.[2]
d. Deposition of CEI **Corporate Representative over Net Worth information**.[3]
e. Plaintiff's Request for Production No. 49 to CEI for **Net Worth documentation**.[4]

3. The discovery deadline is <u>September 30, 2021</u>.[5] Despite these discovery requests being made a month before the discovery deadline, Defendants objected to them as being untimely.

## III. This Discovery Sought is Highly Relevant

4. This accident happened when a highly pressurized trailer gate sprung-open and hit Plaintiff in the head. Critical liability issues include (1) protocols and training for safely opening a pressurized trailer gate and (2) inspecting/maintaining trailer components used to safely open pressurized gates (here, the trailer latches).

[1] Exhibit A; Deposition Notice of Buck Sheffield (sent August 30, 2021).

[2] Exhibit B; Plaintiff's F.R.C.P. 36(b) corporate representative Notice (sent August 30, 2021).

[3] *Id*.

[4] Exhibit C; Plaintiff's Fifth RFP to CEI (sent August 24, 2021).

[5] Document 44 - First Amended Scheduling Order entered on (July 13, 2021).

5. Here, the depositions of John Zambo and Buck Sheffield are important to understanding these safety issues. John Zambo is the safety engineer for East Manufacturing, the subject-trailer manufacturer. He will testify about the following:

a. Manufacturer warnings and instructions used to prevent springing-open accidents;
b. Required inspection/maintenance needed to prevent springing-open accidents;
c. Applicability of the East Manufacturer Trailer Manual produced by CEI for the subject-trailer (hereinafter "Trailer Manual"); and
d. The meaning and applicability of disputed Trailer Manual provisions.

6. The Trailer Manual contains specific safe operating and maintenance provisions for preventing springing-open accidents. For instance, it has a specific protocol in place to make sure that when the trailer gate is opened no one is near it. CEI disagrees with the plain reading and applicability of these provisions. Mr. Zambo, the person responsible for the content in the manufacturer's Trailer Manual, can resolve these disputes.

7. Clarence "Buck" Sheffield is Defendant CEI's Regional Maintenance Manager. It was not until the August 11, 2021 deposition of Tommy Wallace (CEI Regional Safety Manager) that Plaintiff first found out that Buck is the person at CEI who had possession of the Trailer Manual. As of yet, no CEI witness has yet been able to testify about basic information concerning use of the Trailer Manual at CEI and why its protocols were not followed. For instance, it remains unknown know who received the Trailer Manual, when it was first received, how it was used, where it was kept, who had access to it, who made decisions about how it would and would not be used, etc. The depositions of Buck Sheffield (and any different designated corporate representative) are Plaintiff's attempt to get answers to these basic questions.

8. CEI's net worth information is also discoverable in this case because a claim for punitive damages has been pled and may be awarded.

## IV. Defendants' Untimely Objection is Unreasonable

9. Defendants argue that the requested discovery is outside the scope of discovery allowed by Judge Crone when she extended the discovery deadline to September 30. Defendants' unreasonably strict and strained reading of the Status Conference Minute Entry[6] is wrong for two main reasons.

### A. *The Reason for the Discovery Extension has not been Satisfied because Plaintiff is still needing information about the Trailer Manual and its applicability to this case.*

10. First, it is important to remember the primary reason liability discovery was extended in the first place. At the July 6 Status Conference, Plaintiff filed a motion to reopen four CEI depositions based on the fact that <u>CEI did not produce the Trailer Manual until 4:30 p.m. on the date of the original discovery deadline</u>. Despite being requested nine (9) months prior, CEI dropped new and highly relevant safety and maintenance information directly applicable to this accident in our laps with literally 30-minutes left until the discovery deadline.

11. Not receiving such information until after the main CEI depositions were taken prejudiced Plaintiff. Because of this, Judge Crone "found merit" in reopening those depositions because of the late production.[7] It was clear, at least to Plaintiff, that he would be able to conduct discovery over <u>the newly produced information</u>. Nothing was ever stated that Plaintiff was limited to just those reopened depositions or that Plaintiff could not reasonably follow the evidence where it led.

12. Subsequently, Plaintiff received 38 pages of maintenance records for the trailer, redeposed the four CEI witnesses[8] on August 11, and took the deposition of the head mechanic Daniel

---

[6] Document 42 – Minute Entry entered on July 6, 2021.

[7] Document 42 – Minute Entry entered on July 6, 2021.

[8] Jennifer Lyles (driver); Joe LaRocca (Lyles' Manager); Thomas Wallace (Regional Safety Manager); and Dirk Lockhart (Chief Operating Officer and Corporate Rep.).

Gimnick on August 18. Surprisingly, none of the five CEI witnesses deposed about the Trailer Manuel knew anything about it. Literally, none of them had ever seen it, let alone read it. The only person who saw it was Tommy Wallace, and he just saw the cover page. Therefore, while Plaintiff (and Judge Crone) reasonably expected one of these CEI witnesses to be able to give testimony about the facts surrounding CEI's possession/use of the Trailer Manual, no CEI witness has provided such yet.

13. Plaintiff is therefore still almost completely in the dark about CEI's possession of and use of the Trailer Manuel. The road came to a dead end on August 11 when Tommy Wallace testified this was a "maintenance only" manual and told us that he received it from CEI's Regional Safety Manager, Buck Sheffield. Once he pointed the finger at Mr. Sheffield as the source of the Manual, Plaintiff asked to depose him. Additionally, out of fear that Plaintiff would once again be met with ignorance by Mr. Sheffield, Plaintiff asked CEI to designate a corporate representative over the Trailer Manual so Plaintiff could talk to whoever it is that is most knowledgeable about it.

14. Additionally, the deposition of Jacob Zambo (East Trailer Safety Engineer) is also related to the information in the Trailer Manual. After being able to depose all five CEI witnesses about the Trailer Manual, common themes emerged. First, none had ever seen it in any meaningful way. Second, when the contents were reviewed with each of them, they all made a group effort to discredit the safety warnings and instructions by claiming those were either not applicable to this accident or not applicable to the subject-trailer. Other *new* testimony included:

a. Regional Safety Manager Wallace viewing the manual as purely a "maintenance manual" even though it is titled a "Maintenance and Operations" manual.[9]

b. Multiple CEI witnesses stated that the instructions in the manual regarding unloading and springing-up doors were inapplicable to the subject trailer.[10]

[9] Exhibit D; Wallace Deposition (8/11/2021), p. 21.

[10] Exhibit D; Wallace Deposition (8/11/2021), p. 36 – 42. Exhibit E; Lockhart Deposition (8/11/2021), p. 76 – 82,

c. Drivers were not trained on the Trailer Manual or its content, even though the Manual specifically requires such. CEI downplayed the need to do so.[11]

d. CEI does not have a clear policy on whether trailer latches will be repaired. Dirk Lockhart (corporate representative) testified in his first deposition that the latches would never be fixed.[12] In his second deposition, after being confronted with the Trailer Manual, he changed his testimony and said that the latches are repaired when CEI gets around to it but that the trailers remain in operation with broken latches.[13]

e. LaRocca, Lockhart, Lyles, and Wallace all testified that the chain alone was the primary securement mechanism and that the latches were essentially superfluous.[14]

f. Gimnick (lead mechanic) testified that the only purpose of the latches is to secure the trailer gate when the trailer *is empty*.[15]

g. Gimnick and LaRocca both testified that the latches are not used because they break under pressure despite neither knowing of an instance of that ever happening.[16]

h. Gimnick testified that the latches are so unimportant that they are only repaired if CEI has a scrap trailer in its yard with trailer latches on it that can be taken.[17]

i. The trailer maintenance records show that there were multiple inspections performed on the trailer.[18] On the inspection forms, there is a specific spot to check for correct latch operation. The latches were always checked as being "ok" thus showing a failure to inspect and maintain.

---

[11] Exhibit F: Lyles Deposition (8/11/2021), p. 13-17. Exhibit E; Lockhart Deposition (8/11/2021), p. 70 and 71, Exhibit G: LaRocca Deposition (8/11/2021), p. 6-8.

[12] Exhibit H: Lockhart Deposition (3/16/2021), p. 74.

[13] Exhibit E: Lockhart Deposition (8/11/22021), p. 66-69.

[14] Exhibit F: Lyles Deposition (8/11/2021), p. 56. Exhibit D; Wallace Deposition (8/11/2021), p. 44. Exhibit I; Gimnick Deposition, p. 96. Exhibit H: Lockhart Deposition (8/11/22021), p. 53-54. Exhibit E; Lockhart Deposition (8/11/2021), p. 15-16.

[15] Exhibit I; Gimnick Deposition, p. 37-40 and 116.

[16] Exhibit I; Gimnick Deposition, p. 124 and 125. Exhibit G: LaRocca Deposition (8/11/2021), p. 15 – 16.

[17] Exhibit I; Gimnick Deposition, p. 53 and 54.

[18] Exhibit J: Maintenance Records.

15. The point of Mr. Zambo's deposition would be to get clarification on the meaning and applicability of safety provisions in the Manual related to preventing the type of accident that happened to Plaintiff. It was unknown to Plaintiff that CEI was going to dispute the applicability of such until the taking of these recent depositions, and his testimony would be completely consistent with the reason for the discovery extension in the first place.

16. Plaintiff has also exercised complete diligence in scheduling Mr. Zambo's deposition. The CEI depositions regarding the Manual were taken on August 11 and 18. Once Plaintiff found out that CEI was going to deny what was plainly written and attempt to discredit the Manual, Plaintiff reached out to the trailer manufacturer on August 17 for clarification. It was not until August 27 that Plaintiff was able to identify and talk with John Zambo, safety engineer for East. John is directly over safety for the subject trailer and the Trailer Manual. Once Mr. Zambo was identified, Plaintiff sent an email the next business day about taking Mr. Zambo's deposition. That same day, Defendants objected to coordinating his deposition, so Plaintiff moved forward and noticed the deposition so Defendants could file their Quash. Two days later, on September 1, Plaintniff properly disclosed John Zambo and his anticipated testimony as a fact witness and non-retained expert. This was all done a month before the discovery deadline.

17. Defendants' response to these three deposition requests was to object as untimely and outside the scope of the discovery extension. If only Plaintiff or the Court had been clairvoyant enough to know that five (5) CEI witnesses would all claim Trailer Manual ignorance, or that most of them would testify that the warnings and instructions in the Manual did not apply to CEI and this accident, or that the trailer latches were not necessary for safe operation, Plaintiff could have foreseen this problem and made a minute entry about it. Unfortunately, neither Plaintiff nor the Court are that talented. One thing is known though – the sought depositions of Mr. Sheffield, the

corporate representative, and Mr. Zambo are all for the purpose of obtaining information about the Trailer Manual and obtaining information about the Trailer Manual is the entire reason the extension was granted in the first place.

18. Defendants' Motion to Quash should be denied because Plaintiff is still in need of highly relevant liability discovery that is directly related to the reason the discovery extension was granted and because Plaintiff has been diligent in seeking after it.

**B. *Defendants' Claimed Discovery Restriction is Not found in the Minute Entry.***

19. Next, Defendants' claimed discovery restriction is not found in the minute entry. Defendants' restriction is based on a self-serving interpretation of the entry rather than any actual limitation stated by the Court. The entry statements about the court allowing Plaintiff to reopen four liability depositions and to perform other discovery already in progress or requested was never stated to be a limitation on what discovery could be conducted. Rather, it was simply a minute entry about what pending discovery was discussed. Turning a minute entry with no stated limitation into a "discovery was only extended for" argument is not how the entry reads.

**V. Motion to Modify the Court's Scheduling Order**

20. Alternatively, should the Court agree with Defendant's interpretation of the extended discovery deadline, Plaintiff requests the Court modify the Scheduling Order to allow for this important discovery.

21. FEDERAL RULE OF CIVIL PROCEDURE 16(b) governs amendment of pleadings after a scheduling order's deadline to amend has expired.[19] Rule 16(b) provides that once a scheduling order has been entered, it "may be modified only for good cause and with the judge's consent."[20]

---

[19] *Marathon Fin. Ins., Inc., RRG v. Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009).

[20] Fed.R.Civ.P. 16(b).

The Rule requires a party "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension. Four factors are relevant to good cause: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.[21]

***i. Factor 1: Explanation***

22. Factor 1 requires the moving party to present a sufficient explanation for its failure to timely move for an amendment of the scheduling order.[22] Here, CEI's 9- month delay in producing the Trailer Manual is the core reason for the first discovery extension.[23] After the extension, Plaintiff has moved timely to perform and schedule all related discovery. Plaintiff has timely moved to bring these matters before the Court whenever an agreement could not otherwise be reached.

***ii. Factor 2: Importance***

23. An amendment to the discovery deadline is critical in this case for the reasons stated above. For example, John Zambo is expected to offer testimony that directly contradicts CEI's new position on the safety latches. CEI is pushing a theory that the latches are not strong enough to withstand pressure to the trailer gate. It is expected that Mr. Zambo will testify that the manufacturer does not put defective latches on its trailers. A full statement of his expected testimony is found in the attached Disclosure.[24] Likewise, Plaintiff has still not been able to depose

---

[21] *Marathon Fin. Ins., Inc., RRG v. Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009).

[22] *Id*.

[23] Exhibit K: *East Trailer Operating Manual*.

[24] Exhibit L: Plaintiff's Eighth Amended Disclosure.

one CEI witness who can testify about who at CEI received the Trailer Manual, when it was first received, how it was used, where it was kept, who had access to it, who made decisions about how it would and would not be used, etc. Therefore, this discovery is very important to determine these things.

24. Allowing discovery regarding Defendant's net worth is also critical. Facts surrounding the extent of Defendants' gross negligence became clearer following our receipt of the Trailer Manual and the August CEI depositions. At that point, it became crystal clear that the company was consciously indifferent to the safety warnings and instructions regarding training, operation, inspection, and maintenance, and that indifference had directly contributed to this accident. The fact that CEI was in possession of a manual that literally warns of the very springing-up scenario that happened in this case and ignored such is telling of its conscious disregard.

***iii. Factor 3: Prejudice***

25. Defendants will face no prejudice from extending the discovery period. However, if the amendment is denied Plaintiff will be substantially prejudiced in being unable to conduct reasonable and logical discovery regarding newly revealed information. Furthermore, not extending the discovery deadline would act to condone Defendants' actions of sitting on the manual until just before 5:00 p.m. on the day of the discovery deadline. Allowing such a process opens the door to a litigation strategy where litigants sit on relevant information until the day of the discovery deadline to avoid reasonable discovery into the very information the litigant is concealing.

*iv. Factor 4: Availability of Continuance*

26. This case was removed to Federal Court on June 26, 2020.[25] Since that time, the parties have been diligent in conducting discovery in an attempt to comply with the Court's scheduling Order. Specifically, written discovery has been exchanged, over (30) thirty depositions have been taken, Defendants retained (7) seven experts to contest liability, causation, and damages, and Plaintiff retained (3) three experts to support his liability theories and damages. Both parties have spent a lot of time and money conducting this discovery. Additionally, this is a very serious injury case in which Plaintiff suffered a permanent moderate-severe traumatic brain injury, a contusion to his brain, a brain bleed, CSF leak, is unable to work, will never taste or smell again, crushed all of the sinuses in his face, fractured the vast majority of bones in his face, has undergone multiple surgeries, and is still dealing with injuries to his spine and extremities. The extensive discovery reflects the seriousness of the case. Each party deserves to get it right. In light of these things, an extension to complete the remaining discovery is reasonable.

**VI. Miscellaneous Arguments Raised by Defendants**

27. Defendants raise a number of miscellaneous arguments in its Motion that Plaintiff will address below.

28. First, Defendants argue that the manual that was produced on the last day of the first discovery deadline was previously known to Plaintiff. This is not true. Plaintiff never had this Manual. Until CEI produced it, Plaintiff did not know which Manual, if any, that CEI had in its possession. Now that it has been produced, Plaintiff can hold CEI responsible for what safety information they actually had in their possession. Additionally, this is a recycled argument. Defendant made this same argument to the Court when opposing Plaintiff's Motion to redepose

[25] Document 1.

certain CEI witnesses. The Court was not persuaded by this argument then, and it should not be persuaded now.

29. Second, Defendants argue that they are unfairly surprised and prejudiced by Mr. Zambo's designation because Plaintiff did not timely disclose the substance of Mr. Zambo's anticipated testimony as required by FRCP 26(c).[26] This is also untrue. As outlined above, Plaintiff exercised complete diligence in his designation of Mr. Zambo. He was first identified to Plaintiffs on Friday, August 27. Plaintiff emailed defense counsel about him on the following Monday, August 30. Plaintiff then prepared an extensive formal Disclosure of his expected testimony that was filed on September 1. Ironically, it was Plaintiff who was unfairly surprised and prejudiced by Defendants late production of the Trailer Manual. Considering the situation Defendants created, Plaintiff has acted with reasonable diligence is pursuing information as he has been made aware of it and conveying it to Defendants.

30. Third, Defendants argue that the manual, latching system, and trailer maintenance are all irrelevant to the subject incident and nothing more than a red herring. If they truly believe that, then this is truly a bury your head in the sand kind of moment. The Manual contains explicit safety instructions and protocols regarding training, operation, inspection, and maintenance meant to ensure the proper working operation of the trailer latches so that the trailer gate can be safely opened.[27] It expressly says that if such is not followed, serious injury or death may occur. It specifically warns of "springing-open" accidents like what happened to Plaintiff. To avoid such, it specifically says that a safe protocol must be followed that keeps people away from the trailer door when it is actually released. That protocol is to: First, verify that the trailer latches are

[26] Defendant also argues that Plaintiff did not disclose Mr. Zambo's contact information. This is not true. The contact information for East's attorney, who represents Mr. Zambo, was provided in Plaintiff's Eighth Amended Disclosures.

[27] Exhibit M: highlighted excerpts from the Manual.

engaged. Second, with the latches engaged, the operator should then loosen and unhook any winders or chains on the trailer door. Finally, from the side or front of the trailer, the operator should disengage the trailer latches, making sure no one is standing near the trailer door when this is done. Disengaging the latches last requires operators to be at the side or front of trailer and away from the danger zone of possibly being struck by a trailer door that springs open when released. These instructions are purposeful, and they should be followed. Knowing what is in the Manual, it is nothing short of incredible that Defendants would claim that warnings and instructions that prevent springing-door accidents are irrelevant to a case where a person was injured by a springing door..

31. Fourth, Defendants argue that Plaintiff "did not receive the information he was hoping for when deposing the four liability witnesses for a second time," so now Plaintiff is on a fishing expedition. Again, this is a completely baseless argument. The opposite is actually true. CEI witnesses have contradicted themselves and others so many times trying to explain why they failed to follow basic safety rules outlined by the manufacturer. All Plaintiff can do is react to what their witnesses say. For instance, because the CEI witnesses claimed ignorance to the Manual and pointed the finger to Buck Sheffield, Plaintiff requested Buck's deposition. Because CEI witnesses claimed the Manual is inapplicable to this trailer and this type of accident and claim that the latches are defective, Plaintiff called East, identified John Zambo, and requested to take his deposition. Following the evidence is a reasonable thing to do and, in this case, is far from a "fishing expedition." This is not a situation where Plaintiff "did not receive the information he was hoping." This is a situation where CEI employees disclosed so much damning information that additional efforts are being taken to fully net that information.

32. Fifth, Defendant argues that Plaintiff has exceed the "10 deposition" rule found in FRCP 30. Defendants' Motion indicates that there have been 33 depositions taken to date in this case, with 16 of the depositions being noticed by Plaintiff. The math tells us that if Plaintiff noticed 16 of the 33 depositions that Defendants noticed the other 17. That being the case, if Defendants are willing to exceed the 10-deposition limit when it suits them, they cannot fairly argue for shelter behind FRCP 30 now. In other words, there must be consistency. They cannot use the rule as both a sword and a shield when convenient.

**VII. Plaintiff's Retained Economist**

33. Because it could play into the Court's decision making, the Court should know that one of Plaintiff's retained experts (Charles Tormo – economist) suddenly and unexpectedly passed away before his deposition could be taken. Plaintiff immediately made defense counsel aware of this issue. Plaintiff has found and retained a replacement economist (Dr. Gene Trevino). He is currently reviewing the case and conducting his analysis. Plaintiff anticipates that Mr. Trevino's report will be produced on September 17, 2021. Plaintiff is filing a Motion for Leave to substitute him in the place of Mr. Tormo contemporaneously with this Motion and Response.

**VIII. Prayer**

34. Plaintiff respectfully requests that the Court deny Defendants' Motion to Quash and order the following requested discovery be complied with along with any other relief Plaintiff is entitled to:

a. Deposition of John Zambo.
b. Deposition of Clarence "Buck" Sheffield.
c. Deposition of CEI Corporate Representative over the Trailer Manual.
d. Deposition of CEI Corporate Representative over Net Worth information.
e. Plaintiff's Request for Production No. 49 to CEI for Net Worth documentation.

Respectfully submitted,

**THE DAWS LAW FIRM**

/s/ *Malachi Daws*
**MALACHI DAWS**
State Bar No. 24082904
**JUDSON DAWS**
State Bar No.: 24101682
4055 Dowlen Road
Beaumont, TX 77706
P: (409) 838-6000
F: (409) 838-6003
E: mdaws@dawslawfirm.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Discovery has been forwarded to the following counsel of record on this 10th day of September 2021, pursuant to the FEDERAL RULES OF CIVIL PROCEDURE:

/s/ *Malachi Daws*
MALACHI DAWS

JEN A. O'CONNELL
4041 Essen Lane, Suite 500 Baton Rouge, Louisiana 70809 Ph.: 225-387-9888
Fax: 225-387-9886
E-Mail: joconnell@twpdlaw.com
ATTORNEYS FOR STAFFORD TRANSPORT
OF LOUISIANA D/B/A CUSTOM ECOLOGY INC.
*Via Email: joconnell@twpdlaw.com*