**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **John Barnett** | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 1:20-cv-00280** |
| | § | |
| **Stafford Transport of Louisiana d/b/a** | § | |
| **Custom Ecology, Inc. and** | § | |
| **Jennifer Lyles** | § | |
| **Defendants.** | § | |

**PLAINTIFF'S MOTION FOR LEAVE TO SUPPLEMENT TOM TRUSS' EXPERT REPORT, TO SUBSTITUTE DR. GENE TREVINO IN PLACE OF CHARLES TORMO, AND TO DESIGNATE JOHN ZAMBO AS A NON-RETAINED EXPERT WITNESS**

NOW INTO COURT COMES Plaintiff, John Barnett, and files this Motion For Leave Regarding Expert Designations. Specifically, Plaintiff seeks to (1) supplement the expert report of Tom Truss (trailer liability expert), (2) substitute Gene Trevino (economist) to replace Charles Tormo (economist) who unexpectedly passed away, and (3) designate John Zambo (safety engineer who oversees the engineering and the trailer manual for the subject trailer in this case) as a fact witness and non-retained expert) and would show unto the Court as follows:

## I. Background

1. The subject incident occurred on April 10, 2020 when a refuse trailer (i.e., an 18-wheeler trailer used to haul trash) owned and operated by Defendants caused severe injury to Plaintiff. The rear trailer gate became stuck when Defendant Lyles failed to remove a chain before attempting to empty the trailer using a machine called a "Tipper". When Lyles attempted to tip the trailer (i.e., lifting it vertically so the trash would come out the back gate), the gate chain was still attached preventing the gate from opening and releasing the debris. When this happened, all of the debris (appx. 20 tons) pressed against the gate with nowhere to go. This caused immense pressure against the gate chain holding it closed. After Lyles lowered the trailer, there was so much pressure on

the chain that she could not unhook it. Lyles then asked Plaintiff (an employee of the landfill) to cut the chain. As the chain was cut, the gate swung open violently, hitting Plaintiff in the head and sending him flying through the air into a trash pit some 12-15' below. The force of the impact caused multiple facial fractures, irreversible sinus collapse, permanent loss of smell and taste, a moderate/severe traumatic brain injury, and the complete loss of employability.

## II. Authority and Argument Regarding Supplementation of Tom Truss' Report

2. Pursuant to FRCP 26(e) all parties have a duty to supplement previous disclosures if they learn the disclosures are incomplete or incorrect.[1] Parties must supplement expert disclosures by the time Pretrial Disclosures are due.[2] So long as the supplemental Disclosure is not "*out in left field*" compared to the initial disclosure then you do not need leave of court.[3]

3. Tom Truss is Plaintiff's retained expert to discuss liability with regard to the trailer's operation and maintenance. Plaintiff's expert disclosure deadline was March 26, 2021.[4] He produced his initial report on March 22, 2021.[5] Since that time, a considerable amount of discovery has been performed that resulted in the finding of new information. New information includes, but is not limited to, the following:

- The actual trailer manual in the possession of CEI at the time of the incident.[6]
- Mr. Truss' personal inspection of the subject trailer.

---

[1] Fed. R. Civ. Proc. 26(e); *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 371 (5th Cir. 2016).

[2] *Id.*

[3] *Id.*

[4] Document 17.

[5] Exhibit A: Truss' First Report.

[6] Exhibit B: The Trailer Manual.

- Maintenance records for the subject trailer.[7] The trailer maintenance records show that there were multiple inspections performed on the trailer. On the inspection forms, there is a specific spot to check for correct latch operation. The latches were always checked as being "ok" thus showing a failure to inspect and maintain.

- The deposition of Daniel Gimnick (CEI's lead mechanic).

- Regional Safety Manager Wallace viewing the manual as purely a "maintenance manual" even though it is titled a "Maintenance and Operations" manual.[8]

- Multiple CEI witnesses stated that the instructions in the manual regarding unloading and springing-up doors were inapplicable to the subject trailer.[9]

- Drivers were not trained on the Trailer Manual or its content, even though the Manual specifically requires such. CEI downplayed the need to do so.[10]

- CEI does not have a clear policy on whether trailer latches will be repaired. Dirk Lockhart (corporate representative) testified in his first deposition that the latches would never be fixed.[11] In his second deposition, after being confronted with the Trailer Manual, he changed his testimony and said that the latches are repaired when CEI gets around to it but that the trailers remain in operation with broken latches.[12]

- LaRocca, Lockhart, Lyles, and Wallace all testified that the chain alone was the primary securement mechanism and that the latches were essentially superfluous.[13]

- Gimnick (lead mechanic) testified that the only purpose of the latches is to secure the trailer gate when the trailer *is empty*.[14]

---

[7] Exhibit C: Maintenance Records.

[8] Exhibit D; Wallace Deposition (8/11/2021), p. 21.

[9] Exhibit D; Wallace Deposition (8/11/2021), p. 36 – 42. Exhibit E; Lockhart Deposition (8/11/2021), p. 76 – 82,
[10] Exhibit F: Lyles Deposition (8/11/2021), p. 13-17. Exhibit E; Lockhart Deposition (8/11/2021), p. 70 and 71, Exhibit G: LaRocca Deposition (8/11/2021), p. 6-8.

[11] Exhibit H: Lockhart Deposition (3/16/2021), p. 74.

[12] Exhibit E: Lockhart Deposition (8/11/22021), p. 66-69.

[13] Exhibit F: Lyles Deposition (8/11/2021), p. 56. Exhibit D; Wallace Deposition (8/11/2021), p. 44. Exhibit I; Gimnick Deposition, p. 96. Exhibit H: Lockhart Deposition (8/11/22021), p. 53-54. Exhibit E; Lockhart Deposition (8/11/2021), p. 15-16.

[14] Exhibit I; Gimnick Deposition, p. 37-40 and 116.

- Gimnick and LaRocca both testified that the latches are not used because they break under pressure despite neither knowing of an instance of that ever happening.[15]
- Gimnick testified that the latches are so unimportant that they are only repaired if CEI has a scrap trailer in its yard with trailer latches on it that can be taken.[16]

4. Based on this newly discovered information, Truss prepared a supplemental report dated September 3, 2021 that details the newly found information.[17] This supplemental report was produced on September 3, 2021 (one-week before his scheduled deposition). Truss' supplemental report addresses the same subject matter as his first report (operation, maintenance, and training).

5. Tom Truss' supplemental report is in compliance with FRCP 26(e) in that he uses the supplemental report to disclose new information provided to him and the impact said new information had on his opinions. He offers no "left-field" supplementation that would typically require leave of Court. However, in this case, the Court instructed the Parties to "file motions with regard to the specific expert reports the parties seek to supplement."[18] Therefore, in accordance with the Court's directive, Plaintiff files this Motion.

## III. Authority and Argument Regarding the Substitution of Dr. Gene Trevino

6. Plaintiff initially retained Charles Tormo (economist) to offer expert testimony regarding Plaintiff's economic damages. Mr. Tormo's opinions and report were timely disclosed to Defendants. Unfortunately, Mr. Tormo suddenly and unexpectedly passed away. Plaintiff's counsel learned of Mr. Tormo's passing on August 13, 2021. Plaintiff's counsel informed defense counsel of his passing that same day.

---

[15] Exhibit I; Gimnick Deposition, p. 124 and 125. Exhibit G: LaRocca Deposition (8/11/2021), p. 15 – 16.

[16] Exhibit I; Gimnick Deposition, p. 53 and 54.

[17] Exhibit J: Truss Supplemental Report.

[18] Document 42 (July 6, 2021).

7. Plaintiff immediately began looking for a replacement economist. Plaintiff ultimately retained Dr. Gene Trevino. Plaintiff expects to receive and disclose Dr. Trevino's report by September 17, 2021. Of note, neither Parties retained economist has been deposed yet. The Parties have discussed designating the economist depositions after Dr. Trevino's report is disclosed. Therefore, because of these unanticipated circumstances, Plaintiff requests leave to designate Dr. Gene Trevino as Plaintiff's retained economist in this case.

**IV. Authority and Argument Regarding the Designation of John Zambo.**

8. John Zambo is a licensed engineer with thirty years of experience. He has worked as the safety engineer for East for many years. He has specific manufacturer safety oversight for the Genesis refuse trailer involved in this incident. Mr. Zambo, probably more than anyone else, is familiar with the design, functionality, operational safety risks, safety protocols, and Maintenance and Operations Manual for the subject trailer.

9. The need for Mr. Zambo's testimony was not known until after Defendants produced the trailer manual just before 5:00 p.m. on the day of the first discovery deadline and the Court allowed additional discovery (four additional depositions, a second inspection of the subject trailer, and disclosure of pertinent maintenance records regarding the trailer). Many of the positions taken by CEI during the second round of depositions do not mesh with the East's (manufacturer of the trailer) position.

10. For example, during the second round of depositions, Plaintiff learned that (1) CEI intends on arguing that the latches are not strong enough to withstand the pressure of the rear-door of the trailer. It is expected that Mr. Zambo will contradict that argument. (2) CEI intends on arguing that the chains and binders are the primary rear-door securement mechanisms. It is expected that Mr. Zambo will contradict that argument. (3) CEI intends on arguing that the trailer can be

operated without the safety latches because the latches are superfluous. It is expected that Mr. Zambo will contradict that argument.

11. Plaintiff did not previously disclose Mr. Zambo because Plaintiff did not discover the need for Mr. Zambo's testimony until after the second round of depositions. However, when the need for Mr. Zambo's testimony was realized, Plaintiff moved diligently to provide Defendant with a disclosure.

12. The last CEI deposition was taken on August 11, 2021. Transcripts from these depositions were not received by Plaintiff's counsel until August 24, 2021. Plaintiff managed to read through all of the depositions, realize the need from Mr. Zambo's testimony, find Mr. Zambo, coordinate with East's counsel, and get a detailed disclosure out (8) eight days after Plaintiff received the deposition transcripts of CEI's liability witnesses. Despite Plaintiff's efforts, the same Defendants that sat on the most critical piece of liability evidence for nearly one year, take issue with the designation of Mr. Zambo. Defendants' claims about "surprise" and "prejudice" fall on deaf ears.

13. Finally, Mr. Zambo's testimony is important because it goes to the heart of many of Defendants' arguments. Additionally, the Court can expect Mr. Zambo's testimony to be relevant and reliable. As the East employee with oversight of trailer safety and the manual for the specific trailer at issue in this case, there is nobody more qualified than him to testify in this matter. For these reasons, Plaintiff respectfully requests that the Court allow the designation of John Zambo as a fact witness and non-retained expert witness.

## V. Prayer

14. Plaintiff respectfully requests that the Court grant Plaintiff's Motion regarding the supplementation of Truss' report, the substitution of Dr. Trevino in place of Mr. Tormo, and the designation of Mr. Zambo as a fact witness and as a non-retained expert witness.

Respectfully submitted,

**THE DAWS LAW FIRM**

/s/ *Malachi Daws*
**MALACHI DAWS**
State Bar No. 24082904
**JUDSON DAWS**
State Bar No.: 24101682
4055 Dowlen Road
Beaumont, TX 77706
P: (409) 838-6000
F: (409) 838-6003
E: mdaws@dawslawfirm.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that the parties complied with the "Meet and Confer" requirement found in Local Rule CV-7(h). Specifically, Malachi Daws conferred with Jen O'Connell and Barbara Barron via phone call and E-mail regarding this Motion as required by the Local Rules. Opposing counsel is **OPPOSED** to this Motion.

/s/ *Malachi Daws*
**Malachi Daws**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Discovery has been forwarded to the following counsel of record on this 10th day of September 2021, pursuant to the FEDERAL RULES OF CIVIL PROCEDURE:

/s/ *Malachi Daws*
**MALACHI DAWS**

JEN A. O'CONNELL
4041 Essen Lane, Suite 500 Baton Rouge, Louisiana 70809 Ph.: 225-387-9888
Fax: 225-387-9886
E-Mail: joconnell@twpdlaw.com
ATTORNEYS FOR STAFFORD TRANSPORT
OF LOUISIANA D/B/A CUSTOM ECOLOGY INC.
*Via Email: joconnell@twpdlaw.com*