**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **JOHN BARNETT** | * | **CIVIL ACTION NO.: 1:20-CV-280** |
| | * | |
| | * | **JUDGE: MARCIA A. CRONE** |
| **VERSUS** | * | |
| | * | **MAG. JUDGE:** |
| | * | |
| **STAFFORD TRANSPORT OF** | * | |
| **LOUISIANA D/B/A CUSTOM ECOLOGY** | * | |
| **INC., and JENNIFER LYLES** | * | **JURY TRIAL** |

---

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE AND INCORPORATED MOTION FOR EXTENSION OF COURT'S SCHEDULING ORDER**

---

**MAY IT PLEASE THE COURT**

Courts should not condone dilatory conduct by routinely extending deadlines.[1] However, Plaintiff's actions essentially leave the Court with no choice. While Defendants agree Plaintiff can substitute his economic expert, those opinions must remain substantially similar to the deceased expert opinions and temporal deadlines must be placed on this additional discovery. If the Court allows Truss's supplemental expert report and Plaintiff's last minute designation of a new manufacturing expert, the current scheduling order must be shifted (again) at least seven months to provide Defendants the ability to conduct relevant discovery on applicable trailer issues, identify the appropriate rebuttal expert and have the opportunity to fairly defend itself against this fishing expedition. **Given Plaintiff's repeated mischaracterizations of the facts and issues in this matter, an accurate understanding of the accident, supported by the witness testimony, should be considered by the Court when ruling on Plaintiff's Motion for Leave.**

---

[1] See *Geiserman v. McDonald*, 893 F2d. at 787, 791 (5th Circuit 1990).

## RELEVANT FACTUAL BACKGROUND

On April 10, 2020, Lyles admittedly forgot to completely unhook the passenger side chain of her trailer door. Lyles's chain that day was very long. Thus, she completely loosened it from its binder but hung the chain on its last rung. This allowed her to back onto the tipper without the chain dragging on the ground.[2] Once on the tipper, she forgot to return to the passenger side and remove the chain. Lyles then unknowingly tipped the trailer with the chain still attached, causing it to become stuck due to increased pressure. Lyles previously tipped her loads successfully on hundreds of occasions without issue. This is the first time such an incident occurred with one of her loads. After asking a Waste Management employee, Charles Veazie, for a grinder to grind off the chain, Plaintiff appeared out of nowhere.[3] While Plaintiff alleges he was radioed to the tipper by another co-worker Brian Singletary,[4] Brian denies the same.[5] Nevertheless, Plaintiff brought bolt cutters to the tipper despite being advised a grinder should be used. While Charles Veazie was attempting to cut the trailer chain from the side of the trailer and out of harm's way, Plaintiff decided to jump in.[6] Waste Management's Regional Manager believes Plaintiff volunteered to help because Lyles is a woman.[7] Plaintiff admitted neither Lyles, nor anyone else at the scene, asked him to intervene. [8] Nevertheless, Plaintiff took the bolt cutters from Charles Veazie and quickly climbed onto the top of the tipper.[9] There is no dispute Lyles did not anticipate Plaintiff

---

[2] See **Exhibit 1**, Lyles Depo, P198.
[3] Ex-1, P193, L8-13; P192, L2-3; P198, L17-19.
[4] Plaintiff deposition **Exhibit 2**, P126-140.
[5] *See* Exhibit 4 (Excerpt of Deposition of Brian Singletary at P48, L10-P49L18).
[6] Ex-2, P127, L3-4; P136, L11-12; P145, L22-25; P146, L1-12 (Charles' safety); P136, L13-15, 21-22 (instructing Charles); P127, L2-5; P148, L15-28 (climbing on tipper); P127, L8-9; P152, L17-22; P178, L14-16; P202, L11-12 (safe position); P203, L13-18; P269, L5-8 (gate would open).
[7] See Spradley deposition as **Exhibit 3.**
[8] Ex-2, P136, L16-22.P137, L2-4; P138, L5-13; Ex-B, P258, L3-20
[9] Ex-2, P136, L13-15.

was going to cut the chain from atop the tipper.[10] This is because, as all of Plaintiff's coworkers testified, such a dangerous act completely defies common sense.[11] The Waste Management Regional Manager testified "we made sure people knew to stay away [from] it, particularly when it was ejecting a load. Common knowledge of our staff to stay away from the tipper."[12] Every liability fact witness agrees it is common knowledge there is pressure against a trailer door and that the trailer door will come open once chains/binders are removed. This is why none of Plaintiff's colleagues would have repeated Plaintiff's actions that day. Plaintiff admittedly assumed the trailer had been tipped at least once and assumed trash was pressing against the trailer door. [13] Plaintiff knew the pressure against the trailer door[14] could cause it to come open once he cut the chain.[15] Plaintiff chose where to position himself, atop the tipper, despite knowing it could be dangerous.[16]

Plaintiff unilaterally jumped on the tipper, decided to stand within striking distance of the door (that was bulging out with trash due to pressure) and cut the trailer chain.[17] Common sense can lead the Court to conclude what happened next.

Importantly, this is not a "trucking case." Lyles's tractor was disengaged from the trailer, pulled away and turned off at the time of this incident. The trailer was atop the tipper while Lyles stood on the ground several feet away. It is undisputed she was neither driving nor operating the tractor trailer at the time of this incident. The incident occurred in a landfill and on private property.

---

[10] Ex-1, P206, L23-25; P261, L1-10; P265, L8-23; P272, L13-16.
[11] See relevant testimony of Brian Singletary (P36-37), Cecelia Hauffpauer (P101-102), Corey Lott (P95-96) and John Stanley (P85) attached globally as **Exhibit 4** with relevant portions highlighted.
[12] Ex-3, P63, L20-24.
[13] Ex-2, P136, L1-15.
[14] Ex-2, P162, L22-25; P177, L5-9.
[15] Ex-2, P171, L3.
[16] Ex-2, P136, L8-15.
[17] Ex-2, P127, L3-4; P136, L11-12; P145, L22-25; P146, L1-12 (Charles' safety); P136, L13-15, 21-22 (instructing Charles); P127, L2-5; P148, L15-28 (climbing on tipper); P127, L8-9; P152, L17-22; P178, L14-16; P202, L11-12 (safe position); P203, L13-18; P269, L5-8 (gate would open).

An OSHA investigation was conducted thereafter, placing Plaintiff at fault in causing the incident.[18]

## LAW AND ARGUMENT

### I. *The Substitution of Plaintiff's Economist Requires the Substituted Expert's Opinion be Substantially Similar to Tormo*

Defendants agree Plaintiff is entitled to substitute economists given the passing of Charles Tormo. However, Plaintiff failed to alert the Court regarding Defendants' position- consistent with federal court jurisprudence- that Dr. Gene Trevino's opinions must be confined to those same elements of damages expressed by Tormo and substantially similar to those opinions. Additionally, Plaintiff has not provided Trevino's report, his CV, other required expert disclosures or provided Defendants with requested deposition dates. Defendants request the following regarding the substitution: 1) Trevino's opinions be confined to the same element of damages and contain similar opinions; and 2) the Court continue the current scheduling order deadlines to accommodate depositions of Trevino, the deposition of Defendants' rebuttal expert Dr. Randy Rice and the parties' ability to consider *Daubert* challenges of these experts should their opinions merit the same.

**First,** federal courts routinely hold substitutions of this nature must be restricted to opinions substantially similar to the original expert. Here, Tormo provided opinions regarding past lost wages, future lost wages and loss of household services totaling $862,074. [19] Tormo did not provide opinions regarding any other element of damages nor do expert disclosures outline other areas of alleged economic damages. Although Plaintiff previously agreed the opinions would be

---

[18] See **Exhibit 5**, OSHA report conclusions.
[19] See Tormo's report as **Exhibit 6.**

substantially similar, no such parameter is included in his motion or proposed order.[20]

This issue is similar to ones decided in *United States v. State Farm Fire And Cas. Co*.,[21] wherein State Farm's designated force of impact expert experienced serious health issues, precluding his attendance at trial. In *State Farm*, the Court did not even allow the substitution given the substantial prejudice to the opposing party.[22] When substitution is allowed, federal courts agree the substituted expert cannot testify differently than the former expert's report.[23] Permitting substitution is "NOT an invitation to introduce new or different theories in a case."[24] In *Indiana Insurance v. Valmont*, the Court allowed the substitution of a deceased expert but struck the portion of those opinions that were not identified or relied upon by the deceased expert.[25]

Here, Plaintiff counsel previously agreed that the substituted expert's opinions would be substantially similar but that language is not contained within their proposed order.[26] Accordingly, Defendants' request the Court order those parameters. Providing the substituted expert "free reign" will require Defendants' to re-analyze Plaintiff's economic damages, secure a supplemental report from the defense economic expert and further delay moving this matter towards trial.

**Second,** Plaintiff has not yet produced the substituted expert's report. Neither Plaintiff's motion nor proposed order contains parameters for deadlines. Defendants previously requested deposition dates of Trevino but have not received the same.[27] Defendants have also not received

---

[20] See correspondence regarding substitution attached as **Exhibit 7.**
[21] Fed. Supp. 2013, (S.D. Miss 2013); 2013 WL 11320132.
[22] *Id*. at *2 citing *Betzel v. State Farm Lloyds,* 480 F.3d 704, 707 (5th Circuit 2007). Four factors are considered when determining whether to allow such a substitution: 1) the explanation for the failure to identify the witness; 2) the importance of the testimony; 3) potential prejudice in allowing the testimony; and 4) the availability of a continuance to cure prejudice.
[23] *Roberts v. Galen of Virginia Inc.,* 325 F.3d 776, 783.
[24] *Indiana Ins. Co. v. Valmont Elec. Inc.*, No. TH97-0009-C-T/F, 2001 WL 1823587, at *1 (S.D. Ind. Dec. 27, 2001), *amended on reconsideration sub nom. Indiana Ins. Co. ex rel. Pell & Sons v. Valmont Elec., Inc.*, No. TH97-009-C-T/F, 2003 WL 22244787 (S.D. Ind. July 31, 2003).
[25] *Id.*
[26] Exhibit 7.
[27] Exhibit 7.

the expert's CV, witness list or fee schedule regarding under FRCP 26. Given the current discovery deadline is September 30, 2021 with expert challenges due October 29, 2021,[28] Defendants have no choice but to request that the Court continue all current deadlines and reset the final pre-trial conference currently scheduled for February 4, 2022. While Plaintiff's request to substitute his economic expert is certainly reasonable, this circumstance does not foreclose Defendants' right to conduct discovery regarding the substituted expert, take his deposition and consider a *Daubert* challenge if the expert opinion merits the same.

## *II. Plaintiff cannot Establish the Criteria Meriting Designation of a New Expert or Supplementation of Thomas Truss's Report*

The same criteria applies to both designation of a new expert and supplementation of an expert report beyond a court's original deadlines. In determining whether these dilatory actions are warranted, courts consider: 1) the explanation for the failure to submit a complete timely report; 2) the importance of the testimony; 3) potential prejudice in allowing the testimony; and 4) the availability of a continuance to cure such prejudice.[29] The court may excuse failure to comply with Rule 26(a) only if "the failure was substantially justified or is harmless."[30] Otherwise, the remedy is to exclude such evidence or testimony.[31]

### A. Thomas Truss's Supplemental Report Relies on Previously Available Information and/or Irrelevant Information

As Plaintiff's motion did not provide the Court with the supplemental expert report he seeks authority for, Defendants have provided it in opposition.[32] Nevertheless, supplementation masquerading as an attempt to provide new expert testimony, must be rejected. As this Eastern

---

[28] See Scheduling Order Doc 44.
[29] *Reliance Ins Co., v. Louisiana Land & Exploration, Co.,* 110 F.3d 253, 257 (5th Cir., 1997); *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007); *Luna v. Macy's S., Inc.,* 2018 WL 3008728, at *2 (S.D. Tex. June 15, 2018).
[30] FED. R. CIV. P. 37(c)(1).
[31] *Id.*
[32] See Truss Supplemental Report as **Exhibit 8.**

District recently ruled in *Newberry v. Discount Waste, Inc.*,[33] reports consisting entirely of new opinions based on facts previously available to the expert are not supplements, they are considered an untimely expert report. In determining whether supplementation is warranted, courts should consider:

1) <u>Plaintiff has no reasonable explanation for the failure to submit a complete timely report</u>

While Defendants agree a plethora of discovery has taken place since expert reports were due, this additional discovery does not provide Truss the opportunity to correct glaring mistakes in his report and opine on facts available to him prior to the original expert deadline. Defendants take issue with the entirety of the supplemental report as inappropriate and outside the federal rules but specifically with the following:

**Any References of the Trailer Manual**: Truss heavily relies on the East Unloader Transfer Trailer Operating Manual in his supplemental report and attached the manual as Exhibit B to his motion. Plaintiff's false narrative (that CEI somehow stalled the timely disclosure of a trailer manual only requested after expert reports were due)[34] cannot be squared with his amended disclosures. Plaintiff's Eighth Amended Disclosure states that **"THIS SAME MANUAL IS AVAILABLE ONLINE AT ANY TIME**."[35] Plaintiff fails to mention this material fact and that Truss's initial report relied on a similar East Manufacturing Trailer Manual.

The Court must also reject supplementation of the following:

> **Section 4(e): Ms. Lyles, who had prior background with tail gates and doors that might have pressure against them, made no attempt to stop the chain cutting activities with an employee at the rear of her trailer when she knew it was unsafe. (See Lyles deposition transcript below)**

---

[33] F. Supp 4:19 CV 00147, (E.D. Texas 2020, 2020 WL 363775.
[34] See discovery request, [Doc 50- 2].
[35] [Doc 50-3].

In support of the above statement, Truss relies on Lyles's December 11, 2020 deposition testimony which he quotes: testimony secured over three months before Plaintiff's expert deadline. There is no reasonable explanation for the delay in rendering this opinion. Likewise, the following statement relies on deposition testimony from December 11, 2020 and should be excluded:

> **4e) Ms. Lyles, who had prior background with tail gates and doors that might have pressure against them, made no attempt to stop the chain cutting activities with an employee at the rear of her trailer when she knew it was unsafe. (See Lyles deposition transcript below)**

Finally, Plaintiff provides no explanation for the delay in providing the opinion below. Plaintiff has known since Defendants responded to discovery in October of 2020 that CEI's process was to remove one binder/chain at a time. This is not new information nor does Truss provide any explanation supporting this opinion. Truss is not an engineer nor has he provided information regarding any other expertise to credibly testify regarding warping aluminum and steel. He provides no data, scientific evidence or resources in support of this opinion and the supplementation should be rejected.

> **10. As a common sense notation, the process that CEI drivers used that involved securing the tail gate by a chain and binder on either side, and then releasing only one of the devices during the process of unloading, would subject the tail gate to loads that could warp the gate, cause the hinges to fail, and subject undue stress on the chains and binders.[36]**

Although Plaintiff provides the recent July 2021 inspection of the trailer as one reasoning for the supplementation, his report fails to mention any relevant fact learned from the inspection. Plaintiff's motion also repeatedly mentions supplementation is needed to "respond" to CEI witness testimony. Plaintiff seems to forget he bears the burden of proof at trial. Defense evidence is always entirely rebuttal. The need to respond to rebuttal defense evidence is not sufficient grounds for supplementation unless the Court foresees routinely extending scheduling orders.

---

[36] Ex-8.

2) <u>Truss's supplemental testimony is completely irrelevant to the disputed issues and only an attempt to conduct a smear campaign against CEI at trial</u>

In the simplest sense, Plaintiff is attempting to muddy clear waters by pressing issues regarding broken latches, despite **the latches having no bearing on what occurred**. Regardless of the order or manner in which the trailer is readied to be tipped (an order Plaintiff alleges must be followed via the trailer manual), latches are disengaged prior to tipping. In a completely unintelligible portion of his report, Truss states:

> **9. Had the tail gate latches been functioning on the trailer that Ms. Lyles was operating on the day of the incident, both chains and binders would have fell slack after minimal turns of the binders. Both chains could have quickly been loosened to a handy, slackened state as the gate latches would have been engaged to secure the gate from opening against the chains and binders on both sides. With the gate latches engaged, chains and binders on both sides of the trailer would have been slack and easily disconnected without question during Ms. Lyle's tarp removing process and before the trailer was even backed onto the tipper for unloading. (See Lyle deposition excerpt below)**

Truss suggests that the latches would have allowed Lyles to easily unhook both chains before tipping and thus foreclosing the possibility of an accident. But, this argument ignores that Lyles simply forgot to unhook the chain. During his deposition, Truss admitted that Lyles could have forgotten to unhook the chain regardless of whether the latches were working.[37] If so, he believed the issues regarding the latches were irrelevant.

The supplemental report also states the following which must be disallowed:

---

[37] As Truss's deposition was taken September 10, 2021, Defendants are not yet in receipt of the transcript.

> **4d) Ms. Lyles, the driver who was in control of the CEI tractor and trailer involved in the incident, asked someone to cut chains when the trailer gate latches were not engaged and broken. This put Mr. Barnett directly in the danger zone where the door could spring open as warned of in the trailer manual, especially given the failed tipping effort. Lyles never should have attempted to open the door with the latches not engaged, especially under such highly pressurized circumstances. Doing so went against the manufacturer's specific warnings and instructions meant to prevent this very type of incident.**

Truss goes on, paragraph after paragraph, to discuss warnings in the trailer manual that the trailer door could spring open under pressure and cause bodily harm. This information is not new. Every single fact witness in this case agrees the trailer door could swing open and harm someone. ALL of Plaintiff's co-workers agreed that common sense dictates trailer doors will swing open once chains and binders are removed. The landfill regional manager confirmed, this is not only common sense, but part of Waste Management employee training. Whether CEI employees reviewed the trailer manual or not, the only individual in this case that did not have this common sense information is Plaintiff.

3) <u>Defendants will be substantially prejudiced by these supplemental opinions</u>

As more thoroughly outlined in the arguments below regarding Plaintiff's attempt to designate a new expert witness, allowing Truss to rely on a trailer manual that was freely available online prior to expert deadlines, substantially prejudices Defendants. There is zero credible argument or evidence the existence of trailer latches would have changed the outcome of this case. Lyles still would have forgotten to completely unhook the passenger side chain. Any allegation to the contrary is wishful thinking in an effort to employ a strong Reptilian Theory in this case. This strategy was first introduced in "Reptile the 2009 Manual of the Plaintiff's Revolution" wherein attorneys side-step the Golden Rule[38] by encouraging the jury to focus on irrelevant safety and

---

[38] The Golden Rule prohibits asking juries to place themselves in the shows of the plaintiff.

security issues.

Continuous references to Federal Motor Carrier guidelines that control interstate highways, maintenance issues, trailer manuals and latches are irrelevant to what caused Plaintiff's accident. Plaintiff is using this discovery to further a strategy of painting CEI as a bad company. A strategy they hope will distract the jury from Plaintiff's own negligent conduct. As this type of jury manipulation should be disallowed in any courtroom, Plaintiff will suffer no prejudice in disallowing irrelevant discovery. Defendants however will incur additional costs in attempting to rebut such irrelevant evidence at trial: a trial that will also confuse the jury given the sheer amount of evidence and witnesses to be presented.

The following will occur if Plaintiff continues down this path: **(1)** trial will likely last a month with over half the evidence presenting to the jury being unhelpful in determining what facts caused or contributed to the cause of the accident; and **(2)** The current scheduling order must be extended at least seven months to accommodate discovery necessary for Defendants to combat these allegations and the testimony of the East representative/newly designated expert.

4) <u>The Court must restore the orderly discovery process and disregard Plaintiff's continuous disregard for the scheduling order</u>

Paramount to this Court's consideration is its own ruling in *Russell v. Walmart-Stores, Inc.*,[39] wherein the opinion referenced "in situations such as this, district judges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case. Moreover, the important of a single witnesses' testimony cannot singularly override the enforcement of local rules and scheduling orders."

Plaintiffs were already afforded an extension of the scheduling order within certain parameters. While Truss's supplemental opinions are unreliable and irrelevant, the importance of

[39] Fed Supp 2007 (E.D. Texas 2007) 2007 WL 9725186.

his testimony cannot override the need to enforce an orderly procession of discovery.

### *B. Plaintiff's Untimely Fact and Expert Designation of Mr. Zambo Upends the Entire Revised Scheduling Order and is Highly Prejudicial to Defendants.*

1) <u>Plaintiff's explanation for the failure to identify the expert is insufficient.</u>

The evidence shows Plaintiff's explanation for untimely designation of Zambo cannot be excused. First, Plaintiff inspected the trailer at issue in June of 2020. He has photographs depicting the broken latches from that inspection. During this inspection, he learned the make, model and year of the trailer. During depositions of CEI witnesses Derk Lockhart and Thomas Wallace on March 16, 2021, both testified that CEI relies on the chains and binders as their primary source of door securement.[40] *This is not new information or a new argument based on recent depositions.* Considering this information came directly from the Corporate Representative, Plaintiff has been on notice of this position since at least March 16, 2021.

2) <u>Similar to Truss's reliance on the trailer manual, Zambo's testimony is irrelevant to the disputed issues</u>

In addressing the first factor, Plaintiff's motion does not provide much information concerning what Zambo will actually testify to, beyond that "[m]any of the positions taken by CEI during the second round of depositions do not mesh with the East's (manufacturer of the trailer) position,"[41] "it is expected that Zambo will contradict [the Defendants'] argument[s],"[42] and that "Zambo's testimony is important because it goes to the heart of many of Defendants'

[40] Lockhart's original (March 16, 2021) deposition as **Exhibit 9**, P72, L10-P73, L8.
[41] [Doc 49 at 5¶10]
[42] [Doc 49 at 5-6¶10]

arguments."[43]

Defendants' arguments are that the latches are wholly irrelevant to the disputed issues, and simultaneously confusing and highly prejudicial "reptile" attempts to inflame the jury. As outlined above regarding Thomas Truss, there is absolutely no evidence Lyles had difficulty removing her chains/binders because of broken latches. Lyles would have forgotten to remove the chains/binders regardless of whether the latches were working. It is completely irrelevant whether Defendants should have been using latches on April 10, 2020. This theory of negligence is nothing more than an effort to continue developing prejudicial/"reptilian theory" evidence to overly consume the jury's time, and the Court's resources at trial.

3) Prejudice to Defendants if Zambo is allowed to testify

Plaintiff's admission cuts both ways. If Plaintiff's conclusory and vague characterizations concerning the importance of Zambo's testimony is true,[44] Plaintiff cannot credibly dispute the prejudice Defendants will suffer by designating Zambo as a fact and expert witness on the myriad of topics identified in Plaintiff's untimely disclosure. In fact, the issues raised in Plaintiff's Motion for Leave do not discuss numerous topics identified in Plaintiff's untimely disclosure such as: **(1)** warnings and instructions provided by East Manufacturing and the potential for injury presented upon deviation of those warnings and instructions; **(2)** design of the trailer and latches, pressure tolerances of the latches, and that "[w]inders, and if applicable, chains and binders, are secondary securement systems [and] not a substitute for the latch system"; **(3)** "industry safety standards" associated with the trailer and latches; **(4)** yet to be disclosed reasons for the trailer's design and safety mechanisms; **(5)** "the Maintenance and Operations manual, including but not limited to its contents, when/how it is sent to customers, and how it should be used"; **(6)** whether the trailer

[43] [Doc 49 at 6, ¶13]
[44] [Doc 49 at 6, ¶13]

"should be operated when the safety mechanisms on the trailer do not work correctly"; **(7)** "the industry standard regarding the Genesis Refuse trailer and its operation" and **(8)** the build and purchase of the trailer at issue.[45] Additionally, Plaintiff's claim that East has "positions" that do "not mesh"[46] with Defendants is telling. If East has "positions" that do "not mesh" with Defendants, it sounds like East has an axe to grind in defending its trailer product while attempting to point the proverbial finger at Defendants. This fact proves Defendants will be prejudiced if the Court grants Plaintiff's late designation without allowing Defendants the opportunity to respond in kind. Defendants currently have no time to designate experts on the newly contrived issues Plaintiff intends to elicit concerning East's "position."

Courts within the Fifth Circuit recognize that making untimely expert designations pose real prejudice to the other side, and routinely disallow litigants from doing so. *See, e.g.*, *Reliance Ins. Co. v. Louisiana Land & Expl. Co.*,[47] (finding no abuse of discretion where the district court "concluded that '[t]o allow plaintiff to add more material now and create essentially a new report would prejudice the defendants, who would then have to get an expert to address these last-minute conclusions....' "). While a continuance could cure potential prejudice, it will greatly complicate this case and lengthen the trial with numerous additional expert witnesses addressing the design of the trailer, warnings, and the other issues raised by Plaintiff. If the Court is inclined to continue the case, the Court should only do so with the understanding it will greatly change the landscape of the case and the initially contemplated five day jury trial.[48]

4) <u>A continuance could cure potential prejudice, but will further complicate the disputed issues.</u>

---

[45] Doc. 50-4 at 8-9 (¶7-¶18).
[46] Motion at 5, ¶9.
[47] 110 F.3d 253, 257–58 (5th Cir. 1997).
[48] [Doc 9].

Defendants acquiesce the scheduling order can be continued a second time given the lack of a trial date. However, given Plaintiff's latest antics over the Court's last extension, very clear parameters should be set for any extended period. This must include Defendants' ability to: **(1)** conduct discovery to test and rebut the testimony Plaintiff seeks to elicit from Zambo/East; **(2)** disclose fact witnesses to rebut the "factual" testimony Plaintiff seeks to elicit from Zambo/East; **(3)** the opportunity to locate, disclose, and present an expert on design of the trailer at issue and its latch system (including whether the latches themselves are defective and whether the trailer is defectively designed); **(4)** the opportunity to locate, disclose, and present an expert on the sufficiency of the "instructions and warnings [and whether they are or are not] in compliance with industry safety standards for refuse trailers"; **(5)** develop evidence concerning the proportionate responsibility associated with East Manufacturing, which was not at issue until Plaintiff's Eighth Amended Disclosure; and **(6)** respond to Zambo's irrelevant testimony concerning his intention as to the meaning of various provisions in the manual.

## ***III. Conclusion***

Defendants implore the Court to protect a litigant's right to fair and full procedural due process in this case. A process adhering to the orderly commencement of discovery and ensuring a party's time and resources are not expended on needless discovery. Defendants request the Court place parameters around the substitution of Plaintiff's economic expert, disallow supplementation of Truss's report and the late designation of Zambo as a fact and expert witness.

| | |
|---|---|
| Respectfully submitted,<br>TAYLOR, WELLONS, POLITZ & DUHE, APLC | Respectfully submitted,<br>MEHAFFYWEBER, P.C. |
| *<u>. /s/ Jen A. O'Connell .</u>*<br>Jen A. O'Connell<br>Texas Bar No. 24117193 | *<u>. /s/ Barbara J. Barron .</u>*<br>Barbara J. Barron<br>State Bar No. 01817250 |

4041 Essen Lane, Suite 500
Baton Rouge, LA 70809
Telephone: 225-387-9888
Fax: 225-387-9886
joconnell@twpdlaw.com
Attorney for Defendant, Stafford Transport of Louisiana, Inc. d/b/a CEI and Jennifer Lyles

P.O. Box 16
Beaumont, Texas 77704
Telephone: 409/835-5011
Fax: 409/835-5177
barbarabarron@mehaffyweber.com
Attorney for Defendant, Stafford Transport of Louisiana, Inc. d/b/a CEI and Jennifer Lyles

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a copy of the foregoing pleading was filed electronically with the Clerk of Court using the Court's CM/ECF system and a copy sent to all counsel of record by electronic means on September 13, 2021.

*s/ Jen A. O'Connell*
Jen A. O'Connell